**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-11147

JAMES D McCALL; ET AL,

Plaintiffs,

JAMES D McCALL; STANLEY R. COLLINS; E E BOWMAN; J WILLIAM HUFF; MICHAEL N DANA; O J NORMAN; MURL C LINKE; JOSEPH R ROBERTS; LAWRENCE S KISER; NORMAN D BREHM; WILLIAM S BRANCH; JEROME P O'CONNOR; WILLIAM T DAVIDSON; BART A WIESLEY; W H TICEN; BETTY TITCHENER, executrix of Gerald Titchener's estate; and GEORGE D STARIHA,

Plaintiffs/Appellants,

VERSUS

BURLINGTON NORTHERN/SANTA FE COMPANY f/k/a Burlington Northern Railroad Co.; BURLINGTON NORTHERN RAILROAD COMPANY 1991 SEPARATION PAY PLAN; TRUSTEES OF THE BURLINGTON NORTHERN RAILROAD COMPANY 1991 SEPARATION PAY PLAN; TRUSTEES OF THE BURLINGTON NORTHERN RAILROAD COMPANY 1995 VOLUNTARY SEPARATION PLAN; BURLINGTON NORTHERN, INC. PENSION PLAN; BURLINGTON NORTHERN THRIFT AND PROFIT SHARING PLAN; TRUSTEES OF THE BURLINGTON NORTHERN THRIFT AND PROFIT SHARING PLAN; ALAN W. SPEAKER; JEANNE MICHALSKI; and DONALD SCOTT,

Defendants/Appellees.

Appeal from the United States District Court
for the Northern District of Texas

December 26, 2000

1

Before KING, Chief Judge, PARKER, Circuit Judge, and KAZEN[*], District Judge.

ROBERT M. PARKER, Circuit Judge:

Plaintiffs James D. McCall, Stanley R. Collins, E. E. Bowman, J. William Huff, Michael N. Dana, O. J. Norman, Murl C. Linke, Joseph R. Roberts, Lawrence S. Kiser, Norman D. Brehm, William S. Branch, Jerome P. O'Connor, William T. Davidson, Bart A. Wiesley, W. H. Ticen, Betty Titchener, and George D. Stariha appeal the summary judgment entered for defendants (collectively referred to "Burlington Northern") on claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 1991, Burlington Northern determined that it was necessary to reduce its workforce by 500 individuals. Burlington Northern first attempted to reach its targeted workforce level through a voluntary separation pay plan. Donald W. Scott, Burlington Northern's Senior Vice President of Human Resources, was charged with designing and implementing the 1991 Burlington Northern Railroad Separation Pay Plan ("1991 Plan"). Burlington Northern employees with more than ten years of service and who were 55 years of age or older, were eligible to participate in the 1991 plan. The primary benefit offered by the 1991 Plan was a lump sum payment

---

[*]District Judge of the Southern District of Texas, sitting by designation.

computed pursuant to the following formula: "2 weeks base salary times years of service to a maximum of two times annual base salary."

In Scott's prior experience with voluntary separation pay plans at Burlington Northern, employees seemed unwilling to take advantage of the plans because they assumed that there might be another, more generous pay plan adopted in the near future. Scott recommended adopting a plan that would be as generous as possible, in order to accomplish the targeted voluntary workforce reduction without resorting to involuntary layoffs. Other Burlington Northern managers concurred.

Included with the Summary Plan Description ("SPD") was a series of questions and answers designed to answer anticipated employee questions about the 1991 Plan. One of the questions and answers (referred to as the "No Better Benefits Q&A") was the following:

Q:   Will there be another opportunity to participate in a separation pay plan after this one?

A:   The company is offering this plan in an effort to reduce its expenses due to business conditions. At this time, the company's management has not decided whether there will be any additional voluntary separation plans. However, management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan.

Plaintiffs are former employees of Burlington Northern who accepted the 1991 Plan's offer of compensation in return for voluntarily ending their employment. In 1995, Burlington Northern

3

adopted an additional voluntary separation plan ("1995 Plan") that provided better benefits than those in the 1991 Plan. In particular, the 1995 Plan offered separation pay for eligible employees equal to two years' base salary. Plaintiffs requested benefits under the 1995 Plan based upon the No Better Benefits Q&A. Burlington Northern denied the requests. Plaintiffs brought suit asserting claims for breach of fiduciary duty under ERISA, denial of benefits in violation of ERISA, estoppel, and interference with plan benefits under § 510 of ERISA, 29 U.S.C. § 1140. The district court entered summary judgment for Defendants and Plaintiffs timely appealed.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*, viewing all facts in the light most favorable to Plaintiffs. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).

### A. Breach of Fiduciary Duty

A plan participant may bring suit for breach of fiduciary duty to obtain "appropriate equitable relief" to redress violations of ERISA. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Plaintiffs alleged that three acts by Burlington Northern give rise to their causes of action which the district court characterized as breach

of fiduciary duty claims:[1] (1) drafting and distributing the 1991 Plan Q&A section, (2) enacting the 1995 Plan, and (3) denying their claims for benefits under the 1995 Plan.

## 1. Drafting the 1991 Plan

Providing information to beneficiaries about likely future plan benefits falls within ERISA's statutory definition of a fiduciary act. *Varity,* 516 U.S. at 502-503. When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully. *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1538 (3d Cir. 1996).[2]

---

[1]On appeal, Plaintiffs do not identify the statutory basis for some of their arguments. They assert that defendants are "bound" by the No Better Benefits Q&A, but do not articulate that claim in terms of ERISA's protections. We will analyze plaintiffs' contentions within the framework of specific ERISA civil enforcement provisions invoked by their pleadings and ruled on by the district court.

[2]The Fifth Circuit has not yet set out the boundaries of a fiduciary's legal obligation to truthfully inform employees about possible future employee benefit plans. Seven of our sister circuits have held that there is no breach of fiduciary duty in failing to inform beneficiaries about a future plan until and unless that plan is under "serious consideration." *Bins v. Exxon Co.*, 189 F.3d 929, 934-37 (9th Cir. 1999); *Vartanian v. Monsanto Co.*, 131 F.3d 264 (1st Cir. 1997); *Hockett v. Sun Co., Inc.*, 109 F.3d 1515, 1522 (10th Cir. 1997); *Muse v. IBM Corp.,* 103 F.3d 490, 493 (6th Cir. 1996); *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533 (3d Cir. 1996); *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir. 1995); *Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir. 1991). The Second Circuit, on the other hand, declined to treat serious consideration as a "talismanic" indicator, but listed it as one factor in the materiality inquiry. *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122-23 (2d Cir. 1997). It is undisputed, in this record, that the 1995 Plan was not conceived until several years after Plaintiffs made their decision to retire. Finding the question not properly presented, we decline the parties' invitation

5

The district court determined that there was no genuine issue of fact in the summary judgment record concerning whether the statements contained in the No Better Benefit Q&A were truthful when made. Plaintiffs contend that the evidence raises a genuine issue of material fact concerning the truthfulness of the statement that **management** had made a decision regarding future benefits. Specifically, the evidence shows that Don Scott, Burlington Northern's Senior Vice President of Human Resources, made the decision that Burlington Northern would not offer a future plan with better benefits based on his understanding of the management group's intention that the 1991 Plan should be the last time a voluntary separation plan would have to be offered for the purpose of a voluntary workforce reduction. Plaintiffs point to evidence that Burlington Northern's Executive Committee did not specifically discuss or decide whether there were to be any future voluntary separation plans and if so, whether or not the benefits would be better than those offered in the 1991 Plan. Plaintiffs take the position that Scott's decision was inaccurately characterized as the management's decision. Because it is undisputed that Scott was the member of senior management charged with responsibility for making decisions in the benefits area of the business and for implementing them, we find no genuine issue of material fact regarding the truth of the statement that management had made the

to adopt or reject the "serious consideration" test for the Fifth Circuit.

decision. *Cf. Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1540 (3d Cir. 1996)(reciting the test for determining whether a change has received "serious consideration," and limiting "senior management" to those individuals who have responsibility for the benefits area of the business, and who will ultimately make recommendations to the board regarding benefits operation).

Because we conclude that the No Better Benefit Q&A was truthful when made, it cannot support a cause of action against Burlington Northern for breach of fiduciary duty based on a material misrepresentation.

## 2.   Adopting the 1995 Plan

Plaintiffs next contend that Burlington Northern breached its fiduciary duty by adopting the 1995 Plan with significantly better benefits than those contained in the 1991 Plan, relying on the rule that "clear and unambiguous statements in the summary plan description are binding." *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir. 1993). An employer who adopts, amends or terminates an employee benefit plan is not acting as a fiduciary. *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996). Therefore, Plaintiff has not stated a cause of action for breach of fiduciary duty concerning the adoption of the 1995 plan.

## 3.   Denial of Benefits Under the 1995 Plan

Plaintiffs argue that Burlington Northern breached a fiduciary duty owed to them by denying their claims for benefits under the

7

1995 Plan.  When a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to § 502(a)(3).  *Corcoran v. United HealthCare*, *Inc.*, 965 F.2d 1321, 1335 (5th Cir. 1992).  We therefore reject Plaintiffs' breach of fiduciary duty claim based on denial of benefits.

**B.    Denial of Benefits Under § 502(a)(1)(B).**

ERISA authorizes a civil action by a participant "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).    We    review    Burlington    Northern's    plan administrator's interpretation of the plan for abuse of discretion, based on language in both the 1991 and 1995 plans giving the plan administrator discretion to review plan terms and decide claims for benefits.[3]  *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1555-62 (5th Cir. 1991).  The plan administrator's factual determinations are likewise reviewable for abuse of discretion. *Id.*

This Circuit employs a two-step analysis for determining whether a plan administrator abused its discretion in denying a participant plan benefits.  *Rhorer v. Raytheon Eng'rs and Const'rs,*

---

[3]The 1991 and 1995 plan SPDs both provide that the plan administrator is "[r]esponsible for the general administration of the plan, including interpretation and communication of the plan, [and] the determination and right of any person to benefits and the payment of benefits."

*Inc.*, 181 F.3d 634, 639 (5th Cir. 1999). First we must determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with the proper legal interpretation. *Id.* If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. *Id.* But if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *Id.* A decision is not an abuse of discretion if a reasonable person could have reached a similar decision, given the evidence before him. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997).

In examining the proper interpretation of the 1991 Plan, we are guided by three rules. First, the SPD is binding and if there is conflict between the SPD and the terms of the plan itself, the SPD controls. *Rhorer*, 181 F.3d at 640. Second, any ambiguities in the SPD must be resolved in the employee's favor. *Id.* at 641. Third, the SPD must be read as a whole. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991). It would be error to attend only to one paragraph, page, or portion of the summary. *Id.*

The Burlington Northern plan administrator determined that Plaintiffs were not due the enhanced benefits under the terms of the 1991 and 1995 plans. Plaintiffs were not active employees in 1995 and do not argue that they were eligible under the plain terms

9

of the 1995 Plan for benefits arising from voluntary separation from Burlington Northern employment in 1995. Instead, they argue that the Plan Administrator abused its discretion in failing to interpret the statement "management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan" to mean "if there are ever any plans with benefits better than the current plan, you will be entitled to benefits under that plan."

While Burlington Northern is bound by statements in the Plan documents, they are not bound by silence. *Wise*, 986 F. 2d at 938. Contractual vesting is a narrow doctrine. *Id.* To prevail, Plaintiff must assert strong prohibitory or granting language. *Id.* The 1991 Plan is silent as to any potential remedy for the violation of the alleged promise never to offer a better plan. Therefore, there is no binding obligation to pay 1995 Plan benefits to Plaintiffs.

Moreover, Plaintiffs' proposed reading relies on the assumption that management has committed itself never to change the decision announced in the Q&A. That interpretation is belied by the statement, appearing two pages earlier in the same SPD, that "[t]he Company reserves the right to amend and/or terminate this plan at any time for any purpose." It is clear that ERISA allows an employer to amend its beneficiary plan without explicitly reserving that right in its SPD. *Id.* at 936. The combined force

10

of ERISA's statutory allowance of plan amendments and Burlington Northern's reservation of that right in the 1991 Plan forces us to conclude that the plan administrator's interpretation of the 1991 Plan was legally correct. Therefore, we find no abuse of discretion in the denial of Plaintiffs' claims for benefits under the 1995 Plan.

## C. Estoppel

Plaintiffs allege that Burlington Northern is estopped from denying their claims for benefits under the 1995 Plan. The district court held that Plaintiffs' estoppel cause of action is not cognizable because when a party seeks to recover benefits owed under an ERISA plan, state law estoppel claims are preempted by ERISA. *Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir. 1999). On appeal, Plaintiffs contend that they are asserting "ERISA estoppel," citing *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235-38 (3d Cir. 1994). The Fifth Circuit has never adopted "ERISA estoppel," and has in fact expressed doubt as to whether a cause of action for estoppel is cognizable under ERISA based upon written statements. *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997).

We need not consider the availability of ERISA estoppel because, even if we assume the cause of action is available to Plaintiffs, they cannot establish the elements necessary to

11

prevail: (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances. *Id.* Having already concluded that Burlington Northern's representations, which were true when made are not material misrepresentations, we affirm the district court's grant of summary judgment on Plaintiffs' estoppel claim.

**D.    Interference with Attainment of Benefits**

Plaintiffs alleged a claim for interference with the receipt of plan benefits in violation of ERISA § 510, 29 U.S.C. § 1140. The claim is premised on the allegation that the 1991 Plan SPD contained misrepresentations intentionally calculated to cause Plaintiffs to leave their employment, thus giving up compensation and benefits they otherwise would have earned had they continued working. Section 510 of ERISA prohibits employers from discharging employees for the purpose of interfering with their attainment of any right to which they are entitled under an employee benefit plan. *Id.; Perdue v. Burger King Corp.*, 7 F.3d 1251, 1255 (5th Cir. 1993). Plaintiffs contend that Burlington Northern's statement in the No Better Benefits Q&A caused them to resign when they would not have otherwise done so and therefore their resignations should not be considered voluntary. The success of this claim depends upon a finding that Burlington Northern misrepresented the truth in the No Better Benefit Q&A. The district court held that there is no genuine issue of material fact

12

concerning whether Burlington Northern misrepresented present facts when they made the statements in question.  We agree and therefore affirm the district court's grant of summary judgment.

## III. CONCLUSION

Based on the foregoing, we affirm the summary judgment in favor of Burlington Northern.

AFFIRMED.

KAZEN, District Judge, dissenting:

As the majority opinion reflects, Burlington Northern designed the 1991 Separation Pay Plan ("the Plan") to entice as many employees as possible to accept voluntary separation. To that end, the Summary Plan Description ("SPD") explicitly stated that:

"The company is offering this Plan in an effort to reduce its expenses due to business conditions. At this time, the company's management has not decided whether there will be any additional voluntary separation plans. However, management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan."

The majority concludes that in making this representation, Burlington Northern did not breach its fiduciary duty as an ERISA plan administrator because the statements were true when made. That holding initially was made by the district court as a matter of law in a summary judgment proceeding. I believe that there is a genuine fact dispute on this issue. The evidence is that Don Scott alone made the quoted decision that there would be no better benefits in the future. There is also evidence that all important decisions were to be reviewed by other members of senior management. In deposition testimony, Scott recalled a presentation about the Plan to senior management in which he explained "that what we were trying to do was to offer a comfort to employees that if they took this benefit, that it was going to be the best available, that there wasn't going to be another plan immediately behind it of a higher value." On the other hand, the district

14

court acknowledged testimony of other members of the management team "that they did not discuss, review, or approve the verbiage" included in the 1991 Plan. Nevertheless, the district court held, and the majority apparently agrees, that Scott's unilateral decision can truthfully be labeled as a decision by "management" under the test that a plan need be considered only by "those members of senior management with responsibility for the benefits area of the business, and who would ultimately make recommendations to the board regarding benefits operations."

The quoted language is taken from the opinion in <u>Fischer</u> v. <u>Philadelphia</u> <u>Electric</u> <u>Company</u>, 96 F.3d 1533, 1540 (3rd Cir. 1996). That case dealt with the common scenario of complaints by employees that their employer was actually giving "serious consideration" to a retirement plan while either denying or failing to disclose that circumstance to the employees. The <u>Fischer</u> court was concerned with when a future plan is under "serious consideration." <u>Fischer</u> recognized that typically only the Board of Directors can actually implement changes in a benefit package, but concluded that for the "serious consideration" test, it is only necessary that the plan is being considered by those members of senior management responsible for making recommendations to the Board.

In my view, there is a qualitative distinction between determining whether someone in high management is "seriously considering" a future plan and determining whether a company actually has made an important unequivocal decision about a feature

15

of an already promulgated plan. In the face of deposition testimony by senior management members that they never even saw, much less discussed, the SPD language quoted above, it cannot be said as a matter of law that "management has decided" that no future plan would have better benefits. The truth of that representation should be decided by the fact finder.

I also disagree that the plaintiffs cannot sue to recover benefits due under the 1991 Plan. As stated in the majority opinion, the SPD is binding and controls over any conflict with the Plan itself. Further, any ambiguities in the SPD must be resolved in the employees' favor. The majority holds that although Burlington Northern is bound by statements in the Plan documents, it is "not bound by silence," citing Wise v. El Paso Natural Gas Co., 986 F.2d 929 (5th Cir. 1993). The precise language from the Wise opinion is: "While clear and unambiguous statements in the summary plan description are binding, the same is not true of silence." Id. at 938. The instant case does not involve silence but rather a clear and unambiguous statement, namely that no future plan would have better benefits. The majority states that because the Plan is silent as to a potential remedy, it is somehow unenforceable. The remedy is provided by statute itself, 29 U.S.C. §1132(a). The majority also characterizes the plaintiffs' argument as being that management had committed "never to change the decision announced in the Q & A" and that this assumption was belied by other language giving the

16

Company the right to amend and/or terminate the Plan at any time for any purpose. Plaintiffs do not dispute Burlington Northern's right to amend the 1991 Plan, but Burlington Northern never attempted to exercise that right. Moreover, the plaintiffs do not contend that Burlington Northern could never again design a voluntary separation plan. Indeed, the disputed language in the SPD specifically left open the option of future plans. What is at issue is a positive, unequivocal statement that "management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan." The majority again relies on Wise for the proposition that "contractual vesting is a narrow doctrine." 986 F.2d at 938. In Wise, the company had issued SPDs as early as 1977 but in 1985 issued new SPDs which, for the first time, explicitly stated that the company had the right to alter, amend, or otherwise change the plan. In October 1985, the company announced that it would continue previous benefits only for employees who retired before March 1, 1986, and anyone retiring after that day would forfeit company-paid coverage. Id. at 933. The litigation was brought by employees who retired after the cutoff date of March 1, 1986, contending that their rights in previous plans had somehow vested earlier. Wise was specifically concerned only with "employees who had not retired as of the date of the disputed change." Id. at 936. Under the instant plan, employees could elect to participate between June 17 and August 1, 1991. If these plaintiffs had attempted to participate after that

17

time, or if the company had attempted to amend the Plan sometime before the plaintiffs made their election, there might be a legitimate issue of vesting rights. As it is, however, there was no amendment to the Plan at any time, and there is no doubt that the plaintiffs voluntarily left their employment while the language at issue was in effect.

For the foregoing reasons, I respectfully dissent.

18