United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 22, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 04-60814

———————————————

FRANK MELLO,

Plaintiff-Appellee,

versus

SARA LEE CORPORATION, ET AL.

Defendants-Appellants.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Mississippi

———————————————————————————

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The appellant, Sara Lee Corporation, appeals the district court's grant of summary judgment

for the appellee, Frank Mello. The dist rict court applied ERISA-estoppel and found that because

Mello, a Sara Lee employee, relied on the oral assurances of a company executive and on non-binding

monthly pension statements to determine the value of his pension, Sara Lee was estopped from

correcting a clerical error that reduced the amount of his expected benefits significantly. Because

Mello could not have reasonably relied on informal communications to modify or supersede

unambiguous Plan terms, we reverse the district court's grant of summary judgment for Mello and

dismiss the cause of action as a matter of law.

## I. FACTS AND PROCEEDINGS

On September 17, 1984, Dr. Frank Mello began working for Bil Mar Foods, Inc. In 1987, Sara Lee acquired Bil Mar Foods, which became an operating division of Sara Lee. Although Sara Lee had a benefit pension plan, Bil Mar Foods' executives, including Mello, were not permitted to join Sara Lee's pension plan until 1994. Until that time, Bil Mar maintained its own retirement plan, in which Mello participated from 1984 to 1994 and from which he remains entitled to receive benefits. In October of 1994, Sara Lee asked Mello to transfer from Bil Mar Foods to Bryan Foods, another division of Sara Lee.

A disagreement arose between Mello and Sara Lee over whether Mello's pension benefits should be calculated using a hire date of September 17, 1984 or October 31, 1994. If the former date is used, Mello is entitled to $6500 each month in pension benefits; if the latter date is used, he will only receive $950 a month. Mello avers that Lee Kramer,[1] a Sara Lee vice-president, encouraged him to transfer and repeatedly assured him that his credited service date would remain September 17, 1984.

Bryan Foods recorded Mello's hire date on the rate card in his personnel file as October 31, 1994. However, the "original hire date" on his personnel forms was September 17, 1984. From 1995 to 2000, Mello received six annual benefit statements from Sara Lee. Each benefit estimate included a disclaimer regarding the accuracy of the content therein, and instructed the recipient to defer to the terms of Sara Lee's pension plan. Each statement listed Mello's "hire date" and "credited

---

[1]Lee Kramer became president of the Bil Mar Foods division in 1992 and subsequently became president of the Bryan Foods division.

service date" as September 17, 1984. The statements reflected monthly benefits ranging from $5,378 in 1996 to $6,581 in 2000. In December 2001, Mello's wife, who also works at Sara Lee, received an electronic version of her annual benefits while Mello did not. When Mello inquired about his missing statement, he received a "pension estimate" letter, which stated that his credited service date was October 31, 1994 and his monthly benefits were approximately $950.

Mello spoke with several Sara Lee officials in hopes of reinstating his previously quoted monthly benefits amount. Sara Lee's Human Resources Department explained that under the terms of Sara Lee's pension plan, his credited service date was the date he transferred to Bryan: October 31, 1994. According to Mello, the President of Bryan Foods and Sara Lee's Vice President of Human Resources both assured him that the reduction in benefits was an injustice that could be rectified by appealing to the corporation. Sara Lee avers that the Vice President, Karen Walker, merely reiterated that Mello's credited service date was in 1994 because Bil Mar Foods was not a participating employer in the Plan at the time of his transfer and provided him with information regarding appeal procedures. On April 11, 2002, Mello appealed to the ERISA Appeal Committee, which denied his petition. The Committee found that Mello was not entitled to credited service for his years of employment with Bil Mar Foods.

In October 2002, Mello filed suit against Sara Lee and the Sara Lee Pension Plan (collectively "Sara Lee") for benefits under ERISA § 1132(a)(1)(B). Both parties filed cross-motions for summary judgment. On May 27, 2004, the district court granted summary judgment against Sara Lee. It reasoned that "because the Fifth Circuit has not soundly rejected the applicability of ERISA estoppel . . . , and because allowing ERISA estoppel's use in the instant case would best comport with the basic policies undergirding ERISA itself (*i.e.*, to ensure the security of employee income and

3

retirement benefits), the doctrine of ERISA estoppel . . . is applicable in this cause of action."

Applying the three elements of ERISA estoppel, the court found that (1) the erroneous benefits estimates qualified as material misrepresentations, (2) Mello "reasonably and detrimentally relied" on these representations in making his employment and retirement decisions, and (3) Mello's claim involved extraordinary circumstances in that his employer, through written benefit statements and officers' oral statements, repeatedly assured Mello over a six-year period that he was entitled to a monthly amount that was an "extraordinary" overstatement. After Mello refused to take any job offers during the company's reorganization in 2001 and 2002, his position was eliminated and he negotiated a severance agreement. Sara Lee now appeals the district court's order granting Mello summary judgment on his ERISA claim.[2]

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo*. *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The parties dispute whether the Committee's denial of Mello's claim should be reviewed for an abuse of discretion. Challenges to an ERISA plan administrator's denial of benefits are reviewed

---

[2]The district court granted summary judgment for Mello only in part. Sara Lee then moved for certification under 28 U.S.C. § 1292(b) and to stay proceedings in order to allow it to appeal the grant of summary judgment on the ERISA-estoppel claim. The district court granted the motion for certification, and the motion to stay proceedings and this court granted Sara Lee leave to appeal from the district court's interlocutory order.

4

under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan does grant such discretion, courts review decisions for abuse of discretion. *Id.*; *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2001). Section 9.01 of the Plan states that the Sara Lee Corporation Employee Benefits Administrative Committee has "discretionary powers, rights, and duties . . . [t]o determine all questions arising under the Plan, including the power to determine the rights or eligibility of Employees or Participants and . . . [t]o enforce the Plan in accordance with its terms . . . ."

Because the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms, it should be reviewed *de novo*. *See Rhorer v. Raytheon Eng'rs and Const'rs, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1514 (5th Cir. 1994) (noting that "in contrast to the great deference we grant the [administrator's] interpretations of the Plan, which involve contract interpretation, we accord no deference to [its] conclusions as to the controlling law") (quotations and citation omitted). Furthermore, the Committee made no finding as to whether the equities of the situation required Sara Lee to honor any representations it may have made to Mello. Because Mello's estoppel claim is not a review of a decision of the Committee, the district court properly exercised *de novo* review.

## III. DISCUSSION

ERISA preempts state laws that "relate to" an employee benefit plan because Congress was concerned that state laws might interfere with the administration and management of such plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 105 n.25 (1983). In light of such preemption, "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated

5

plans.'"[3] *Firestone Tire*, 489 U.S. at 110 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)).

This circuit has yet to explicitly adopt ERISA-estoppel as a cognizable legal theory.[4] In the past, we have considered that the theory could be cognizable given the right set of facts. *McCall*, 237 F.3d at 513 (5th Cir. 2000); *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997). We now join other circuits in explicitly adopting ERISA-estoppel as a cognizable theory. To establish an ERISA- estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. *McCall*, 237 F.3d at 513; *Weir*, 123 F.3d at 290.

A. Material Misrepresentation

Sara Lee concedes that it erred as to the amount Mello's benefit statements reflected that he was due upon retirement. Sara Lee argues, however, that these errors do not constitute material misrepresentations because the benefit statements are informal communications that cannot be used

---

[3] The Supreme Court, which first enunciated this view of federal courts' power to create federal common law under ERISA in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), bases this often repeated assertion upon a statement by Senator Javits, one of ERISA's sponsors: "[A] body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong. Rec. S29942 (daily ed. Aug. 22, 1974) (statement of Sen. Javits). "The Javits statement has become the single most important, and undoubtedly most cited, source for the asserted authority to create federal common law under ERISA." Jeffrey A. Brauch, *The Federal Common Law of ERISA*, 21 HARV. J.L. & PUB. POL'Y 541, 549 (1998).

[4] The majority of other circuits, however, have adopted the theory of ERISA estoppel. *See Bonovich v. Knights of Columbus*, 146 F.3d 57, 62–63 (2d Cir. 1998); *Smith v. Hartford Ins. Group,* 6 F.3d 131, 137 (3d Cir. 1993); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 639 (7th Cir. 2004); *Jensen v. Sipco*, 38 F.3d 945, 953 (8th Cir. 1994); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004).

to amend the Plan. In other words, Sara Lee contends that representations are material only if they are in an official plan document. Sara Lee also argues that materiality is not in reference to "[w]hat is material to Mello" but rather "whether the Benefit Estimates are 'material' to the interpretation of the Plan."

Contrary to Sara Lee's assertions, material misrepresentations can be made in informal documents. For example, in *Curcio*, the Third Circuit concluded that statements in an audio-visual presentation and pamphlet were material representations. 33 F.3d at 237 (noting, however, that the company announced its new benefit through a pamphlet rather than by formally amending the summary plan description). As to whether materiality refers to the representation's importance to the plan or to the plaintiff, a "'misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision.'" *Id.* (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)); *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 58 F.3d 896, 907 n.20 (3d Cir. 1995) ("Regarding the requirement of material representation, . . . [t]he retirees contend that the record clearly establishes that many of the retirees . . . relied to their detriment on the company's misrepresentations because many employees accelerated their retirement and gave up salary and pension accruals they would have gained if they had continued to work.").

Plaintiffs are able to satisfy the material misrepresentation element if their employers misrepresented any pertinent information. *See Weir*, 123 F.3d at 289–90 (finding the plaintiff-appellants unable to satisfy this element where the employer neither misrepresented nor misled the plaintiff with respect to the plans and made sincere efforts to inform the plaintiff of its interpretation of the plan). Because there was a substantial likelihood that a reasonable employee would be misled

about making adequately informed decisions by Sara Lee's benefit statements' undisputed errors, the district court correctly concluded that the benefits statements were material misrepresentations.

B. Reasonable and Detrimental Reliance

Mello must demonstrate reliance upon the representations made by Sara Lee. The reliance must be both reasonable and detrimental. *See Curcio*, 33 F.3d at 237. Contrary to the district court's conclusion, it was unreasonable for Mello to rely on Sara Lee's informal material misrepresentations regarding his benefits and Mello cannot establish his estoppel claim.

ERISA's policy against informal modifications of plan terms precludes a finding that Mello reasonably relied on the benefit statements' pension amounts. Mello does not argue that he relied on the benefit statements and Kramer's oral representations to help him interpret an ambiguous or unclear term in the Plan. Rather, he contends that he was reasonable to rely on the benefit statements and Kramer's assertions *rather than* the unambiguous credited service definition in the Plan.[5] Mello's claim therefore amounts to an argument that informal written and oral statements amended or modified the terms of the Plan.

The district court found that despite the benefit statements' disclaimer that they were "for illustrative purposes only" and "[t]he Plan documents will govern the determination of any benefits

_____

[5] The "credited service" provision of the Plan is defined as "a Participant's number of years and completed calendar months of employment with an Employer while a Participant with each such completed calendar month of employment constituting one-twelfth of a year of Credited Service." Sara Lee notes that the same section of the Plan "excludes certain employment with the Company from the definition of Credited Service, including any period of employment as a member of a group or class of Employees employed by a participating employer prior to the date as of which that group of class of Employees is designated as a Covered Group." Exhibit A of the Plan lists the subsidiaries and divisions that qualify as participating "Employers" under the Plan and specifically provides that while Bryan Foods has been a participating employer since 1979, Bil Mar Foods became a participating employer on July 1, 1994. These unambiguous provisions made it clear that Mello could not begin earning "credited service" until 1994, when he transferred to Bryan Foods.

8

you are eligible to receive," "the substance and implications of the written misrepresentations are enough in and of themselves to warrant a finding of reasonable detrimental reliance on material misrepresentations." In reaching this conclusion, the district court took into account "the repeated oral assurances made by Sara Lee via its Vice President Lee Kramer that Mello would retain his credited service date of September 17, 1987 [sic] upon transfer within Sara Lee."

However, ERISA-estoppel is not permitted if "based on purported oral modifications of plan terms." *Wier*, 123 F.3d at 289 (citing *Rodrigue v. W. and S. Life Ins. Co.*, 948 F.2d 969, 971 (5th Cir. 1991); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1297 (5th Cir. 1989); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989)). Such claims are precluded because ERISA provides that "'every employee benefit plan shall be established and maintained pursuant to a written instrument.'" *Cefalu*, 871 F.2d at 1296 (quoting 29 U.S.C. § 1102(a)(1)); *Rodrigue*, 948 F.2d at 971. As noted in *Cefalu*:

> The policy behind the "written instrument" clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees. But for the "written instrument" clause, employees could discriminate in favor of certain plan participants to the detriment of others. In addition, the writing requirement gives the plan's participants and administrators a clear understanding of their rights and obligations. Employees who rely on a written benefit plan should not have their benefits eroded by oral modifications to the benefit plan. Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries.

871 F.2d 1290, 1297 (5th Cir. 1989) (noting that the Tenth and Eleventh circuits have reached similar conclusions). In *Rodrigue v. Western and Southern Life Insurance Co.*, the court "adopted the reasoning of the Seventh and Eighth Circuits that ERISA's writing requirement protects the plan's actuarial soundness by preventing plan administrators from

contracting to pay benefits to persons not entitled to them under the express terms of the plan." 948 F.2d 969, 971 (5th Cir. 1991) (affirming *Cefalu*'s preclusion of ERISA-estoppel claims based on oral modifications of clear plan terms); *see also Izzarelli*, 24 F.3d at 1517 ("ERISA disfavors generally arguments based on promissory estoppel or on alleged modifications of plan documents that are not made via the plan's internal amendment process.")

In *Sprague v. GMC*, the Sixth Circuit noted that a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." 133 F.3d 388, 404 (6th Cir. 1998). The court held that allowing "estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves. That would not be consistent with ERISA." *Id.* In *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litigations*, which applies the Third Circuit's estoppel test used in this circuit, the court emphasized that a basic principle of ERISA is that a plan cannot be modified or superseded by extrinsic evidence. 58 F.3d 896, 902 (3d Cir. 1995). In *Unisys*, a company engaged in a "systematic campaign of confusion" which led the plaintiff-employees to believe mistakenly that their benefits continued for life. *Id.* at 907 n.20. The court "acknowledge[d] that many retirees may have relied to their detriment on their interpretation of the summary plan descriptions as promising vested or lifetime benefits." *Id.* at 907. However, because the summary plan descriptions contained "unambiguous reservation of rights clauses," the plaintiffs' interpretation of the plans as providing lifetime benefits was unreasonable and their estoppel claim was precluded. *Id.* The court summarized:

10

> While our decisions have not required an express finding of plan ambiguity as an element for establishing an estoppel claim, we have required that reliance be reasonable. Because our decisions require that any detrimental reliance on plan language also be "reasonable," our finding that the [terms of the Plan] are unambiguous undercuts the reasonableness of any detrimental reliance by the retirees. Accordingly, we hold that the district court did not err in concluding, on summary judgment, that the retirees' estoppel claim failed as a matter of law.

*Id.* at 908. Mello's claim cannot surmount the clear and consistent case law forbidding recognizing reasonable reliance on informal documents in the face of unambiguous Plan terms.[6]

Mello argues that *Curcio* provides support for his reasonable reliance on informal extrinsic evidence because the plaintiffs relied on misrepresentations in a pamphlet and an audio-visual presentation. Although the *Curcio* court did find reasonable reliance based on these material misrepresentations, the relevant plan term in the summary plan description was unclear. 33 F.3d at 236.

Because Mello's reliance on the informal benefit statements and oral representations was unreasonable, we need not consider whether the reliance was detrimental or if extraordinary circumstances existed.

## IV. CONCLUSION

Because Mello has not satisfied the reasonable reliance, he cannot establish that ERISA-

---

[6] In addition, even if the terms of the Plan were ambiguous, Mello could not have reasonably relied on his extrinsic evidence. First, as previously discussed, oral assurances have low probative value in ERISA cases. Second, the written benefit statements contained a prominent disclaimer and contradicted unambiguous terms of the ERISA plan document. The pension estimate stated that "[e]very effort has been made to ensure the accuracy of the information reported; however, future changes in Plan provisions or law, or your pay or service cannot be foreseen. Therefore, the actual benefit paid to you will be determined by the Plan provisions . . . . The benefits shown here are estimates for illustrative purposes only. The Plan documents will govern the determination of any benefits you are eligible to receive."

11

estoppel should be applied to preclude Sara Lee from correcting the amount of his pension benefits.

Therefore, the opinion of the district court is **REVERSED** and this case is remanded for further proceedings.