IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-40099

MEECORP CAPITAL MARKETS LLC

Plaintiff-Appellee

v.

TEX-WAVE INDUSTRIES LP; MONTY GUILES; DAVID CROFT

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:06-CV-00148

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:[*]

A lender sought recovery on a defaulted debt. Via summary judgment, the district court awarded the lender the full amount owed from, jointly and severally, the debtor and two guarantors. Because a fact issue remains as to whether the guarantors should be held personally liable, we reverse and remand for a determination of their liability. We also reverse the district court's judgment on the total liability amount and remand for further proceedings to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

recalculate the award, crediting the amount recovered by the lender in its foreclosure sale.

## I. FACTUAL & PROCEDURAL BACKGROUND

On June 15, 2004, Plaintiff-Appellee Meecorp Capital Markets ("Meecorp") and Defendant-Appellant Tex-Wave Industries, LP ("Tex-Wave") entered into an agreement by which Meecorp agreed to loan $4,620,000 to Tex-Wave for the building of a hot-dip galvanizing facility on a seven-acre site leased from the City of Robstown, Texas.[1] In return, Tex-Wave executed three five-year promissory notes in the amounts of $1,670,000, $1,662,000, and $1,288,000. Meecorp also obtained a security interest in the galvanizing plant and the seven-acre leasehold, a personal "Guaranty" agreement from Tex-Wave principals, Defendants-Appellants Monty Guiles ("Guiles") and David Croft ("Croft"), and a pledge agreement under which Meecorp would have the right to take control of and vote Tex-Wave's partnership interests in the event of default. Meecorp also obtained a surety bond from the City of Robstown.

The promissory notes obligated Tex-Wave to pay interest on the loan from July 1, 2004, until the maturity date of the loan. Tex-Wave made payments until November 1, 2005, when it failed to make the interest payment due on that date. On November 9, 2005, Meecorp sent Tex-Wave, Croft, and Guiles (collectively, "Defendants") a written notice of default, warning that Meecorp would exercise its rights under the loan agreement if it did not receive payment within five days. Tex-Wave failed to make the payment, and Meecorp accelerated the loan. On March 30, 2006, Meecorp filed the instant suit against Defendants and others,[2] seeking a declaration that Tex-Wave defaulted on its

---

[1] Tex-Wave also received support for this project from the U.S. Economic Development Administration and the City of Robstown.

[2] Also named in the suit were the law firm of Ysassi & Ysassi, PC, and Epimenio Ysassi, a lawyer at that firm. Meecorp later amended its pleadings to add claims against the City of Robstown and members of the Robstown City Council. Meecorp has settled its claims against

loan, a judgment for the defaulted principal amount of $4,620,000 plus interest and other fees, and enforcement of the Guaranty given by Guiles and Croft.

On May 2, 2006, Meecorp foreclosed on the leasehold estate and improvements. Meecorp was the only bidder at the sale and placed the winning bid of $3 million. On October 12, 2006, Tex-Wave obtained a temporary injunction from a Texas state district court "enjoining [Meecorp] from listing for sale or selling the business of [Tex-Wave] during the pendency of this lawsuit."

On October 27, 2006, Meecorp filed a motion for summary judgment against Defendants. After responsive briefing, the district court granted summary judgment, holding Defendants jointly and severally liable for $7,013,869.93 (the balance due on the three promissory notes plus interest and late fees), and declared that an "Event of Default" had occurred, giving Meecorp the right to vote the partnership interests of Tex-Wave pursuant to the pledge agreement. Tex-Wave, Guiles, and Croft brought this appeal.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's grant of summary judgment. See Mello v. Sara Lee Corp., 431 F.3d 440, 443 (5th Cir. 2005). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The movant "must establish beyond peradventure all of the essential elements

the law firm, Ysassi, Robstown, and the City Council members.

of the claim or defense to warrant judgment in [its] favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

## III.  DISCUSSION

There is no dispute that Tex-Wave defaulted on its debt.[3]  In their appeal, Defendants instead focus on two issues: (1) whether Guiles and Croft should be released from liability under the Guaranty; and (2) whether the judgment awarded to Meecorp should be reduced by the $3 million recovered in its foreclosure sale, an issue not raised by Defendants at summary judgment.

A.    Liability of Guiles and Croft under the Guaranty

The district court held that Meecorp met its summary judgment burden by showing that (1) Guiles and Croft agreed to "'guarantee[] absolutely and unconditionally to Lender the payment of the Debt,'" and (2) Tex-Wave was in default on that debt.  Under the district court's reasoning, this was sufficient to establish that, as a matter of law, Meecorp was entitled to recover under the Guaranty.

Guiles and Croft center their argument before this court—as they did in opposing summary judgment—on the following provision in the Guaranty:

> Notwithstanding anything else contained herein to the contrary, if, after a default shall occur under the Loan Agreement and the Note, if the Guarantors shall cooperate with the Lender in realizing the collateral, including, without limitation, the foreclosure of the Mortgagee, and shall not in any way interfere with the Lender in connection therewith, and the foreclosure sale shall take place without interference by any of the Guarantors or principals, officers or directors of the Borrower, then the Lender shall waive the provisions of this Guaranty and shall deliver the Guaranty back to the Guarantors marked "satisfied."

---

[3] Defendants argued in their response to Meecorp's summary judgment motion that a side agreement with Meecorp averted default on the underlying debt.  However, the district court found no such agreement and Defendants do not appeal that portion of the judgment.  Therefore, we will not review that portion of the district court's order.  See Donovan v. Rd. Rangers Country Junction, Inc., 736 F.2d 1004, 1006 (5th Cir. 1984) (per curiam).

Guiles and Croft argue that the district court improperly imposed the burden of proof on them to show cooperation and lack of interference under this provision. They claim that because Meecorp did not show either a failure to "cooperate with the Lender in realizing the collateral" or some "interference," Guiles and Croft should have been released under the plain language of the Guaranty after the foreclosure sale. Guiles and Croft also stated in their response to Meecorp's summary judgment motion that they did "cooperate[] with any and all requests of Meecorp, even offering to turn over the keys." In addition, Guiles and Croft claim that regardless of who bore the burden of proof on this question at summary judgment, Tex-Wave's injunction could not be interpreted as interference, because Tex-Wave obtained the state court injunction five months after Meecorp's successful foreclosure sale.[4]

Meecorp counters that Guiles and Croft failed to carry their burden to prove that they had satisfied the requirements of the Guaranty. See Fitzmaurice v. Van Vlaanderen Mach. Co., 264 A.2d 740, 744 (N.J. Super. Ct. App. Div. 1970) ("Where a party seeks to avoid a contractual obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it.").[5] Because the moving party does not need to produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmoving party would bear the burden of proof at trial, see Celotex Corp. v. Catrett, 477 U.S. 317,

---

[4] Relatedly, Guiles and Croft note that the face of the state injunction merely enjoins Meecorp "from listing for sale or selling the business of [Tex-Wave]." (emphasis added). This, they argue, might include Tex-Wave's sweat equity or good will but cannot be construed to include the leasehold, fixtures, and related property Meecorp owns outright as a result of the foreclosure sale.

[5] The Guaranty explicitly provides that it should be construed under New Jersey law: "This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New Jersey, without regard to conflicts of laws considerations and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state . . . ."

322-23 (1986), Meecorp argues that it need not negate Guiles and Croft's unsupported assertions of cooperation. See also Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986) ("If the movant . . . does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense.").

First, we consider whether Meecorp met its initial burden under Rule 56(c). A genuine issue of facts exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000) (citing Anderson, 477 U.S. at 255). Additionally,

> when the movant is a plaintiff he must ordinarily do more than defeat the opposing party's affirmative defenses in order to obtain a final [rather than partial] judgment. Since, in addition to asserting an affirmative defense, the defendant will likely have denied the plaintiff's allegations, the plaintiff must also establish all of the essential elements of his claim.

Fontenot, 780 F.2d at 1195-96 (internal quotation marks and citations omitted). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Celotex, 477 U.S. at 325).

In its summary judgment motion, Meecorp established through authenticated documents that Tex-Wave was in default on its debt and that Guiles and Croft were liable under a provision of the Guaranty. However, the plain language of the Guaranty also directs that if the foreclosure takes place without interference, then Meecorp "shall deliver the Guaranty back to the Guarantors marked 'satisfied.'" Meecorp ignored this provision in its initial

motion, and in its reply brief, Meecorp's citation to the state court injunction actually raised a factual question as to whether interference existed. Because Meecorp failed to establish that there was no issue of fact with respect to the Guaranty, summary judgment was not appropriate.

Evidence of the state court injunction raises a fact question as to whether Guiles and Croft interfered with Meecorp's realizing on the collateral. Therefore, on the question of the individual liability of Guiles and Croft under the Guaranty, we vacate the district court's summary judgment and remand for a determination of whether Guiles and Croft fulfilled their obligation to cooperate and not interfere with Meecorp's effort to "realiz[e]" its collateral.

B.    Outstanding Loan Amount

In its motion for summary judgment, Meecorp presented the affidavit of Daniel Edrei ("Edrei"), Managing Member of Meecorp, attesting that the total amount due under the company's loan to Tex-Wave, including interest and late fees, was $7,013,869.93.[6]  Tex-Wave explicitly denied that the total amount calculated by Meecorp was the correct amount, but it did not request that the $3 million credit from the foreclosure sale be applied to the debt, nor did Defendants offer any evidence to refute Meecorp's calculation. The district court awarded the full amount requested in Meecorp's summary judgment motion without applying any credit for the $3 million Meecorp recovered in the foreclosure sale. We hold that the district court erred by failing to credit the outstanding loan amount by proceeds of the foreclosure sale.

The plain language of the loan agreement requires a credit in this situation: "In the event of a sale of the Collateral, or any other disposition

---

[6] Meecorp's motion also was accompanied by copies of the loan agreement, the three promissory notes, the Guaranty, the pledge agreement, Meecorp's notice of Tex-Wave's November 1, 2005 missed loan payment, and a copy of the state court injunction. However, there was no explanation of the total amount due other than the figure cited in Edrei's affidavit.

thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees, and then to the Obligations of Borrower to Lender."[7] There is no dispute that Meecorp successfully sold—and itself purchased—Tex-Wave's leasehold, fixtures, and related property securing the loan for $3 million on May 2, 2006. Meecorp should have reduced Tex-Wave's debt by that amount.

In its pleadings, Meecorp admits as much, stating that "[s]ince the filing of this lawsuit, Plaintiff Meecorp has pursued non-judicial remedies and has foreclosed upon certain collateral securing the loan. The amount sought in this lawsuit will be offset to the extent of this foreclosure." Further, in its summary judgment motion, Meecorp stated, "This sale price [of the foreclosed property] should have operated as an offset to the balance due under the loan."

Meecorp claims, however, that the $3 million credit Tex-Wave seeks is an "offset" and is therefore an affirmative defense that Tex-Wave should have raised in its pleadings. Meecorp also claims that Tex-Wave is not entitled to a credit because the state court injunction allegedly prevented Meecorp from selling the collateral.[8] We find this reasoning unpersuasive. The $3 million operates not as an offset, but as a credit, which, by operation of law, should reduce the amount of the underlying debt. Indeed, this is the purpose of the

---

[7] The Guaranty also provides for a credit in a foreclosure sale: "IF THE LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY THE BORROWER: (I) THE AMOUNT OF THE DEBT MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT THE FORECLOSURE SALE, EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE . . . ."

[8] Meecorp claims that because of the state court injunction, "the Leasehold Estate is of no value and thus represents no offset to the loan." However, Meecorp cites no legal authority for this proposition, and we have no evidence that the state court action hindered or continues to hinder Meecorp's use or sale of the foreclosed property it now owns.

foreclosure sale.[9]  Meecorp advocates a result in which it sells the collateral, pockets the proceeds, and does not adjust the loan amount.  This cannot be the correct result.  We hold that, as a matter of law, Defendants were entitled to have their outstanding loan amount credited by the amount recovered in Meecorp's foreclosure sale.

However, it is unclear whether simply reducing the judgment by $3 million would achieve the proper result.  In its summary judgment submission, Meecorp's only basis for its figure was Edrei's affidavit setting the total amount due, "including interest and late fees."  It is possible that a $3 million reduction in the loan amount could affect those calculations.  Furthermore, the loan agreement specifies that proceeds from the foreclosure should first be applied to "all costs and expenses of disposition, including reasonable attorneys' fees."  Therefore, we remand to the district court to recalculate the proper judgment amount, taking into account a $3 million credit for Meecorp's foreclosure sale.

## IV.  CONCLUSION

Finding that the district court erred in granting summary judgment on both issues discussed herein, we reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

[9] It is a basic concept of mortgage law that the amount recovered in a foreclosure sale reduces the overall amount of the debt.  See RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 8.4(a), (b) (1997) ("If the foreclosure sale price is less than the unpaid balance of the mortgage obligation, an action may be brought to recover a deficiency judgment against any person who is personally liable on the mortgage obligation . . . . [T]he deficiency judgment is for the amount by which the mortgage obligation exceeds the foreclosure sale price.").