**John OGLESBY, Plaintiff,**

v.

**AT & T CORP. and AT & T Pension Plan, Defendant.**

**Civil Action No. 3:05–CV–0434–B.**

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 27, 2006.

Leland C. de la Garza, Shackleford, Melton & McKinley, Gary C. Wallace, Law Office of Gary C. Wallace, Dallas, TX, for Plaintiff.

John V. Jansonius, Jennifer A. Reith, Akin Gump Strauss Hauer & Feld, Dallas, TX, for Defendants.

1. The facts are derived from the parties' jointly-submitted Stipulation of Facts and their Joint Exhibits. (doc. 14) Both parties have disputed statements that the other has submitted. Because the Court has found it unnecessary to rely upon the challenged facts in considering the present motions, the discrepancies are immaterial.

## MEMORANDUM ORDER

JANE J. BOYLE, District Judge.

Before the Court are the Defendants AT & T Corporation's and AT & T Pension Plan's ("AT & T") Motion for Summary Judgment (doc. 15), filed October 3, 2005, and Plaintiff John Oglesby's ("Oglesby") Cross Motion for Summary Judgment (doc. 18), filed October 26, 2005. The parties make these motions on the grounds that there are no material facts in dispute and that judgment should be rendered as a matter of law on whether AT & T has violated ERISA by denying Oglesby's pension plan request. Having reviewed the pleadings on file, the Court GRANTS AT & T's Motion for Summary Judgment in its entirety and DENIES Oglesby's Motion for Summary Judgment in its entirety for the reasons that follow.

## I. BACKGROUND [1]

Oglesby is a Texas resident who was an employee of AT & T for over sixteen years, during which time he was a participant in the AT & T Pension Plan. (Stipulation of Facts ("Stipulation") ¶ 2) On December 28, 2002, three months prior to his retirement from AT & T, Plaintiff married Kathryn Oglesby. (*Id.* ¶¶ 2, 9) On January 20, 2003, as part of the required paperwork to receive his pension, Oglesby completed a "pension election package" in which he elected, from among other options, to receive the "100% Joint and Survivor Annuity" option. (*Id.* ¶¶ 4, 9) This option provides monthly payments for life to the participant equal to 85% of his accrued benefit [2] and, after his death,

2. "A Participant's Accrued Benefit under the Plan as of a given date is expressed in the form of a pension benefit, payable monthly, for the life of the Participant beginning as of the first day of the month after the month in which Participant attains Normal Retirement Age, or termination of employment, if later." (J. Ex. 2 § 2.01) Under a Single Life Annuity, a participant's monthly payment is equal to the accrued benefit.

monthly payments for life to his lawful spouse, equal to 100% of his monthly payments if such spouse survives him. (*Id.* ¶ 4) Both John and Kathryn Oglesby signed the election form, he as the participant and she as the beneficiary. (*Id.* ¶¶ 9, 10; Joint Exhibit ("J. Ex.") 3) Oglesby formally retired on February 16, 2003, and the pension commenced on March 1, 2003 with the first payment received by Oglesby on April 1, 2003. (Stipulation ¶ 11) On October 1, 2003, a state district court in Nueces County, Texas annulled the marriage of Plaintiff and Kathryn Oglesby. (*Id.* ¶ 12; J. Ex. 4)

After the annulment, Oglesby submitted the Decree of Annulment to AT & T and requested that Kathryn Oglesby be removed as his designated beneficiary spouse. (*Id.* ¶ 13; J. Ex. 4) An AT & T representative responded that the Decree of Annulment was insufficient under Texas law since it did not expressly terminate or waive Kathryn Oglesby's rights as a beneficiary and directed him to relevant sections of the Texas Family Code. (Stipulation ¶ 14) The representative then repeated that any papers submitted would have to be reviewed by AT & T's legal department. (*Id.*) Oglesby then submitted to AT & T a Decree of Annulment Nunc Pro Tunc, stating that Oglesby was to be awarded 100% of any pension plans accrued as a result of his employment. (Stipulation ¶ 16; J. Ex. 5 at 2) Oglesby requested that "the entire pension check" and all future benefits be paid to him. (Stipulation ¶¶ 16–17; J. Ex. 6) AT & T, acting in its role as the plan administrator, eventually denied the request and Oglesby's subsequent appeal. (Stipulation ¶¶ 19–20; J. Ex. 9–11) AT & T denied the alterations to the benefit election because Oglesby had received benefits before requesting a change. (Stipulation ¶ 19; J. Ex. 9) AT & T explained to Oglesby that he would continue to receive 85% of his accrued benefit and Kathryn Oglesby would receive his pension benefits after his death, should he predecease her. (*Id.*)

AT & T characterizes Oglesby's request for "the entire pension check" as an attempt to change his benefit plan to a "Single Life Annuity," an option in which the participant receives 100% of his monthly payments for the duration of his life with no beneficiary. (Defs.' Br. Supp. Motion for Summ. J. ("Defs.' Br.") at 2; Stipulation ¶¶ 4, 16, 18). In support of the denial, AT & T cites provisions within the Summary Plan Description ("SPD"), the Election Form, and the Pension Plan, which both parties agree expressly, specifically, and unambiguously state that a participant's payment election is irrevocable once the pension has commenced. (Stipulation ¶ 7)

Oglesby contends that his request is not an attempt to revoke his plan election but merely a demand that Kathryn Oglesby's attempted waiver through the annulment be given effect on its own and, as a consequence, his pension check be credited as though she had predeceased him. (Pl.'s Br. Supp. Resp. and Cross–Motion for Summ. J. ("Pl.'s Br.") at 37) In support of his petition, Oglesby cites a plan provision applicable to the 50% and 100% Joint and Survivor Annuity elections, allowing the plan participant to receive 100% of his accrued benefit should the beneficiary spouse predecease the participant. (*See* J. Ex. 2 § 4.06(b)(iv)) In the alternative, Oglesby urges the Court to create federal common law and hold that an annulment of a plan participant's marriage returns the participant and beneficiary spouse to the pension status and pension rights each had before they were married. (Pl.'s Br. at 35)

Oglesby filed this action against AT & T pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C § 1132(a)(1)(B), seeking to recover

benefits under the terms of the Plan and to clarify his rights to future benefits under the Plan. (Compl. ¶ 1) Alternatively, Oglesby files this action pursuant to ERISA, 29 U.S.C. § 1132(a)(3), for breach of fiduciary duty to inform Oglesby of material aspects of his retirement election under the Plan. (*Id.*) The parties have briefed the issues, and the Court now turns to the merits of their arguments.

## II. ANALYSIS

### A. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir.2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir.2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 371–72 (5th Cir. 2002).

Once a movant demonstrates that there are no genuine issues of material fact as to the issues on which he seeks summary judgment, the burden shifts to the non-movant to point to evidence in the record sufficient to support a resolution of the issue of fact in its favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of the lower court deciding a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The material facts of this case are not in dispute. The questions presented require a purely legal determination: (1) whether AT & T should be compelled to recognize Kathryn Oglesby's attempted waiver of her rights under the Plan and (2) whether AT & T should be compelled to increase the monthly pension benefits paid to Oglesby.

### B. Oglesby's Section 1132(a)(1)(B) Claims

Oglesby has brought this suit pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows qualified employee benefit plan participants or beneficiaries to bring a civil suit to recover benefits due under the plan. Oglesby contends that Kathryn waived her rights to the already-vested pension benefits when the state court issued the Decree of Annulment Nunc Pro Tunc. (Pl.'s Br. at 14–15) Oglesby maintains that, upon the finding of a valid waiver by Kathryn, the only appropriate consequence of the waiver is that AT & T be required to increase his monthly pension check so that he receives the same amount of benefits that he would have received under his elected payment plan if Kathryn predeceased him. (*Id.* at 23) Under the Summary Plan Description ("SPD"), this would be a payout equal to the Single Life Annuity payment option. AT & T, on the other hand, characterizes the nature of Oglesby's request as an attempt to revoke his election of the 100% Joint and Survivor Annuity option in favor of a Single Life Annuity election—a violation of the terms of the Pension Plan. (Defs.' Br. at 9–10)

As an initial matter, the Court is not convinced that the Decree of Annulment Nunc Pro Tunc constitutes a waiver by Kathryn. In *Hopkins v. AT & T Glob-*

*al Information Solutions Company,* the Fourth Circuit concluded that ERISA pension benefits irrevocably vest in the plan participant's current spouse on the date of the participant's retirement. 105 F.3d 153, 156 (4th Cir.1997). The Fifth Circuit adopted the *Hopkins* court's rationale in *Rivers v. Central and South West Corporation,* holding that the current wife beneficiary's survivor benefits irrevocably vested in her on her husband's retirement and that an ex-wife was forever barred from acquiring an interest in his benefit plan. 186 F.3d 681, 683–84 (5th Cir.1999). Because Kathryn Oglesby was still married to Oglesby on the date of his retirement, the beneficiary rights she was given through the Pension Plan vested on that date and became hers, free of any other interest, even that of Oglesby himself. In order to give up her rights to the survivor annuity, Kathryn's waiver must be explicit, voluntary, and made in good faith.[3] *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1327 (5th Cir.1994). In this Court's view, the Decree does not amount to an explicit waiver by Kathryn herself.

 Nevertheless, even assuming that Kathryn was able to effect a valid waiver of her rights to her survivor benefits under the Pension Plan, the Court reaches the same ultimate conclusion as the plan administrator—that AT & T is not required to increase Oglesby's pension to the equiv-

alent of the Single Life Annuity payment option set forth in the Plan.[4] The AT & T Pension Plan constitutes a contract between AT & T and all plan participants, and its terms govern the administration of the Plan. *See generally Mathews v. Sears Pension Plan,* 144 F.3d 461 (7th Cir.1998) (treating ERISA pension plan as a contract and using federal common law of contracts when fiduciary issues are not in question). In short, it is a matter of contract law. Oglesby is seeking to get out of his contract to which he previously agreed to be bound.

AT & T made it clear to plan participants that when a participant makes a payment election, it becomes irrevocable when the participant's pension commences. This is repeated in the SPD, the Plan itself, and even on the payment election form. (J. Ex. 1 at 14; J. Ex. 2 § 4.06(b)(iv); J. Ex. 3) Oglesby signed the payment election form, acknowledging that he was aware that upon commencement of his pension, the election became irrevocable. (*See* J. Ex. 3) In turn, Kathryn Oglesby signed the election form, giving her irrevocable consent to the election. (*Id.*) Based upon Oglesby's contract with AT & T, he is locked into his 100% Joint and Survivor Annuity election. This means that under the Plan, Oglesby may only receive 85% of his accrued benefit, which is stated in terms of a monthly

3. Although *Brandon* is an ERISA life insurance plan case, the requirement that a waiver be explicit, voluntary, and made in good faith still applies to the instant case. This standard was adapted by the *Brandon* court from the Seventh Circuit's opinion in *Fox Valley & Vicinity Construction Workers Pension Fund v. Brown,* a pension plan case. 897 F.2d 275 (7th Cir.1990).

4. Oglesby substantially relies the Seventh Circuit's opinion in *Fox Valley* to support his conclusion that AT & T must use its own plan provisions regarding the preceding death of a beneficiary spouse as the measure of his bene-

fit increase. 897 F.2d 275. The Court finds Oglesby's argument wanting. The *Fox Valley* court did not discuss the basis for its decision to award the mother the benefits waived by the ex-wife. 897 F.2d at 282. Despite Oglesby's characterization of the *Fox Valley* court's analysis, it is far from clear whether the court looked to the effects of a beneficiary predeceasing the participant in order to reach its decision under the plan terms or whether the court chose to view the waiver as the equivalent of a failure to name a beneficiary. Thus, the Court will not decide the instant case on that basis.

payment. (J. Ex. 2 §§ 2.01, 4.06(b)(ii)(D), 4.06(b)(iv)) While the Plan creates an exception for when the beneficiary spouse predeceases the participant,[5] Oglesby does not adequately explain why AT & T should apply that exception to the waiver situation here. (J. Ex. 2 § 4.06(b)(iv))

Moreover, granting Oglesby's request to apply such an exception would unduly complicate the administration of the AT & T Plan. AT & T and other ERISA pension plan providers make actuarial determinations under a framework based on the terms of their plans and depend on the predictability provided by the terms set forth in their plans. Actuarial determinations as to benefit payments, among other things, are based upon mortality tables for participants and spouses, so a plan administrator must know on the day that the participant retires to whom the survivor annuity will be paid. *Hopkins*, 105 F.3d at 157 n. 7; *TWU–NYC Private Bus Lines Pension Trust v. Adams*, 2003 WL 22383288, at *4 (S.D.N.Y. Oct. 17, 2003). AT & T provides for this certainty in the administration of its Plan by making a participant's payment election irrevocable once pension benefits commence. Allowing a waiver to result in an increase in the participant's monthly payments renders these calculations flawed and undermines the predictability of plan administration. Permitting waiver to operate as the beneficiary predeceasing the participant spouse could result in payment of 100% of a participant's accrued benefit earlier than predicted by the mortality tables. This, in turn, would render it difficult for AT & T to ensure that its pension plan is adequately funded.

Oglesby has cited to several life insurance cases to support his argument that AT & T should have given effect to Kathryn's attempted waiver and increased his pension benefits as if she had predeceased him. The Court is not persuaded by these cases. The fundamental distinction between this case and cases involving life insurance is the very fact that life insurance providers know at the outset that they will be obligated to pay 100% of the death benefits to *someone*, even if they do not know in advance whether they will pay the proceeds to the named beneficiary or another individual. Here, the Pension Plan has agreed that it will pay out the entire amount of the participant's cash balance account only under certain circumstances acknowledged and agreed to by the participant. Calculations and decisions of the plan administrator are accordingly based on that agreement.

■■■ The Court next turns to the issue regarding the plan administrator's decision not to increase Oglesby's pension check to 100% of his accrued benefit. When a plan administrator is given discretionary authority, as in this case, the administrator's interpretation of the plan is reviewed under an abuse of discretion standard.[6] *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir.2000). As set forth in the Fifth Circuit's opinion in *Wildbur v. ARCO Chemical Company*, courts reviewing a plan administrator's denial of a qualified par-

**5.** If Kathryn were to predecease Oglesby, then Oglesby's payments would be increased to 100% of his accrued benefit beginning with his next payment. (J. Ex. 2 § 4.06(b)(iv)) However, at no time would he recapture the 15% reduction of all prior payments.

**6.** The Pension Plan grants the administrative committee (here, AT & T) *"sole and complete*

*discretionary authority* and control to manage the operation and administration of the plan, including ... determination of the amount and kind of benefits payable to any Participant, Spouse or beneficiary, and construction of disputed or doubtful terms." (Stipulation ¶ 3; J. Ex. 1 at 39).

ticipant's claim for benefits determine two issues: whether the plan administrator's interpretation of the plan is legally correct and, if not, whether that decision constituted an abuse of discretion. 974 F.2d 631, 637 (5th Cir.1992). To determine whether a plan administrator's interpretation was legally correct, the court considers three factors: "(1) whether the Plan has been given a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) whether a different interpretation will result in unanticipated costs." *Tait v. Barbknecht & Tait Profit Sharing Plan,* 997 F.Supp. 763, 769 (N.D.Tex. 1998) (Fish, J.). If the court finds that the plan administrator's decision was not legally correct, then the court must determine whether the administrator's actions were arbitrary or capricious and therefore, an abuse of discretion. *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.,* 168 F.3d 211, 214 (5th Cir. 1999).

■ Neither party has provided evidence regarding whether AT & T uniformly construed the Plan. Therefore, the legal correctness of AT & T's decision hinges on whether a fair reading of the Plan and the aforementioned unanticipated costs of effecting the waiver support denial of an increase in Oglesby's pension benefits.

In examining whether a plain reading of the Plan supports AT & T's decision, three provisions are of critical importance. First, the Pension Plan states that after the pension has commenced, the election by the participant will become irrevocable. (J. Ex. 2 § 4.06(b)(iv)) This is repeated in the SPD and on the Election Form signed by Oglesby. (J. Ex. 1 at 14; J. Ex. 3) Both parties agree that the above forms expressly, specifically, and unambiguously state that the participant's benefit payment option is irrevocable once the pen-

sion has commenced. (Stipulation ¶ 7) Second, the above section also explains that "[i]f the annuitant predeceases a pensioner after the Pension Commencement Date ... the pensioner's pension shall be restored by the amount of the original reduction for this election." (J. Ex. 2 § 4.06(b)(iv)) This is repeated in the SPD. (J. Ex. 1 at 15) Third, a separate section of the Pension Plan provides that:

> If any payment or other benefit to which an individual is entitled under this Plan is unclaimed or otherwise *not subject to payment* to the person or persons so entitled, such amounts representing such payment or payments shall be retained in the trust or trusts associated with the Plan and shall not escheat to any state or revert to any party, but may, in the judgment of AT & T, be used to offset future contributions to the Plan and/or its associated trust or trusts.

(J. Ex. 2 § 7.19) (emphasis added)

Looking to these provisions, the beneficiary death clause is not applicable to this situation because its use is clearly precluded by the phrase "if the annuitant predeceases a pensioner," which is not the case here. (J. Ex. 2 § 4.06(b)(iv)) Meanwhile, the revocation provision explicitly prohibits a change in the elected payment plan after commencement. (*Id.*) Seeking to have his payment increased from 85% to 100% of his accrued benefit as a "consequence" of the waiver could reasonably be interpreted by the plan administrator as a petition to have Oglesby's 100% Joint and Survivor Annuity election revoked in favor of a Single Life Annuity payment election. Lastly, the Plan's unclaimed benefits provision specifies that benefits not subject to payment to the persons so entitled shall be retained by the Plan. (J. Ex. 2 § 7.19) After the Oglesbys executed the Election Form through which Mr. Oglesby selected

the 100% Joint and Survivor Annuity, Kathryn Oglesby was entitled to the survivor benefits; however, a valid waiver would have caused any future payments to Kathryn Oglesby to become "not subject to payment." (*See id.*) The plain language of the Plan thus requires that instead of being paid to Kathryn if Plaintiff predeceased her, the funds remain with the Plan and be used to offset future contributions. (*Id.*) This is far from the unjust enrichment that Oglesby contends. The redirection of these funds to the AT & T Pension Plan is no different than when a participant and, subsequently, the participant's beneficiary die and the remaining funds inure back to the Plan. AT & T's refusal to increase Oglesby's monthly payments after Kathryn Oglesby's waiver is a legally-correct reading of the Plan regardless of whether it acknowledged her waiver of plan benefits. Therefore, the Court GRANTS summary judgment in favor of AT & T on Oglesby's § 1132(a)(1)(B) claims.

## C. Annulment

■ Alternatively, Oglesby argues that the annulment of his marriage returned him and his ex-wife to the pension status and pension rights they held before their annulled marriage. (Pl.'s Br. at 35) According to Oglesby, he is ineligible for the 100% Joint and Survivor Annuity he elected because he was never married, so AT & T must pay him under the Single Life Annuity election, the default payment plan for unmarried participants. (*Id.*) This is an issue of first impression, and Oglesby provides the Court with no on-point authority to support his arguments. The Court remains unpersuaded by Oglesby's arguments. Holding that annulment invalidates a plan election would create sub-

stantial uncertainty in plan administration. As discussed previously in a different context, the Court considers it unreasonable to expect ERISA pension plans and their administrators to accommodate such unpredictability.

The Eleventh Circuit also espouses this view. *See Griffis v. Delta Family–Care Disability and Survivorship Plan,* 723 F.2d 822, 825–26 (11th Cir.1984) (per curiam) (Appx.). In *Griffis,* a district court ruled that an ERISA plan did not have to reinstate a widow's survivorship benefits after she remarried and later had the remarriage annulled. *Id.* The Eleventh Circuit affirmed the district court's ruling and adopted its opinion in which the uncertainty problem created by annulment is more completely explained:

> [s]ince there is generally no statutory time limit for obtaining an annulment, the Plans could never be certain that a former beneficiary's marriage would not be annulled and the Plans' obligation to pay benefits reinstated. The Plans would be left dangling upon the uncertainties of the success or failure of that second marriage. Since Delta's contributions to the Plans are made upon actuarially determined requirements, there would be no adequate way of prefunding for such contingencies. Also, since the Plans would not be a party to the annulment proceedings, their future obligations would be determined by circumstances over which they had little knowledge or control. These uncertainties would affect both the operation and administration of the Plans as well as their ability to accurately project future funding needs.

*Id.*[7] Although *Griffis* addresses a slightly different situation from that of Mr. Ogles-

---

7. Here, the court quotes from Delta Family–Care's summary judgment brief. The court goes on to instruct that "the committee's legitimate concern for correct anticipation of

funding needs, requires this court to leave the defendants' denial of reinstatement undisturbed." *Id.*

by, the court's analysis is highly applicable to the instant case. Here, AT & T and other pension plans would never know when participants would seek an annulment in order to eliminate future payments to a named beneficiary and to receive a full Single Life Annuity themselves. Although they significantly affect actuarial determinations, these payment changes would be nearly impossible to plan for in advance and would create a risk of the plans becoming underfunded. Further, the plans would be unable to make their own payment decisions, and instead, those determinations would be made in annulment proceedings in which the pension plans were unable to participate. Thus, the Court declines Oglesby's invitation to create federal common law to address the effect of annulment on an ERISA pension plan and DENIES Oglesby's summary judgment motion on its annulment grounds.

### D. Oglesby's Fiduciary Duty Claims

 Oglesby also maintains that AT & T breached its fiduciary duty to him by failing to disclose to him that a spouse named as a beneficiary could not waive her benefits under the Plan. (Compl. § 37; see also 29 U.S.C. 1132(a)(3)) Oglesby explains that he would have chosen the Single Life Annuity payment option had he been made aware that the Plan would not give effect to a beneficiary's attempted waiver of her rights to survivor benefits in favor of the plan participant. (Compl. § 37) AT & T counters that the plan administrator was just doing its fiduciary duty to follow plan documents and that plan documents informed Mr. Oglesby three times that he could not revoke his pension payment election once his pension commenced. (Def.'s Br. at 14) To that end, AT & T moves the Court to grant summary judgment in favor of Defendants on this issue. Oglesby contends that the silence of the plan documents on the Plan's

interpretation of waivers and annulments creates an issue of material fact and precludes summary judgment. (Pl.'s Br. at 36)

 Under ERISA, a plan fiduciary, such as AT & T, must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. 1104(a). As to an ERISA fiduciary's duty to disclose, the Fifth Circuit has explained that trust principles impose such a duty "when there are material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know but needs to know for his protection." *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 412 (5th Cir.2003) (internal quotations omitted).

 While Oglesby complains that the plan documents do not address waiver or annulment and insists that AT & T should have clarified its interpretation of the Plan as applied to those situations, the Court believes that Mr. Oglesby is arguing semantics. Both situations effect a change in a participant's benefits payment election. As discussed above, the plan documents state at least three times that a participant cannot revoke/change a payment election once the pension has commenced. These statements within the plan documents address the issues of waiver and annulment from a general perspective rather than enumerating each act that qualifies as a revocation. AT & T can hardly be expected to intuitively know when a participant is confused over certain aspects of the Plan, and the Court cannot fault Defendants for treating the revocation issue generally rather than addressing in the plan documents every possible contingency that could result in a change in payment election by a participant. Indeed, the Fifth Circuit has held that

absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists. It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading.

*Switzer v. Wal–Mart Stores, Inc.,* 52 F.3d 1294, 1299 (5th Cir.1995) (holding that plan administrator of an ERISA health plan did not have to anticipate the confusion of a plan participant). The *Switzer* court's holding is equally applicable to Mr. Oglesby's claims regarding his ERISA pension plan. While Oglesby insists that he would have made a different payment election had he known how the Plan treats waiver and annulment, he never made an inquiry to the plan administrator to find out how these two situations would be treated if either were to occur. Therefore, AT & T had no fiduciary duty to address these specific situations either in its plan documents or in any communication with Oglesby prior to the commencement of his pension. Instead, AT & T's discussion of the irrevocability of a payment election was sufficient to inform Oglesby of the permanence of his election and to satisfy AT & T's fiduciary duty to Oglesby. If he was confused about what would constitute a revocation, Oglesby should have contacted AT & T for clarification prior to the commencement of his pension. Absent a specific inquiry by Oglesby, AT & T was not required to do anything more. Thus, the Court GRANTS summary judgment for AT & T on the issue of breach of fiduciary duty.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS AT & T's Motion for Summary Judgment on Oglesby's section 1132(a)(1)(B), annulment, and breach of fiduciary duty claims and DENIES Oglesby's Motion for Summary Judgment in its entirety.

**SO ORDERED.**