**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-10988
_____


DALLAS COUNTY HOSPITAL DISTRICT, doing business as Parkland
Memorial Hospital,

                                          Plaintiff-Appellant,

versus


ASSOCIATES' HEALTH AND WELFARE PLAN,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
June 19, 2002

Before DUHÉ, DeMOSS and CLEMENT, Circuit Judges.

CLEMENT, Circuit Judge:

    Dallas County Hospital District d/b/a Parkland Memorial
Hospital (the "Hospital") appeals from the district court's summary
dismissal of its ERISA claim for lack of standing. We agree with
the district court that the Hospital lacks independent standing as
a beneficiary, but we find that the Hospital has sufficiently shown
that it may have standing derivatively as an assignee of a
beneficiary. Accordingly, we affirm in part, reverse in part, and
remand for further proceedings consistent with this opinion.

On April 3, 1998, Leonard P. Scott was admitted to the Hospital for emergency treatment of severe burns Scott sustained after falling or walking into a bonfire.  He remained hospitalized until his death on April 21, 1998.  During that time, the Hospital rendered medical services and provided goods to Scott valued at $151,522.12.

At all relevant times, Scott was a participant in the Associates' Health and Welfare Plan (the "Plan"), an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Several times during Scott's stay at the Hospital, Hospital representatives contacted Wal-Mart Stores, Inc. ("Wal-Mart"), Scott's employer and the sponsor of the Plan, through its authorized representative, International Rehabilitation Associates, Inc. d/b/a Intracorp ("Intracorp"), to request approval for the hospitalization and to report on Scott's condition.  During these interactions, the Hospital informed Plan representatives that Scott had been drinking at the time of his accident.  Through Intracorp, the Plan certified to the Hospital that Scott's treatment and hospitalization were medically necessary, although at no time did the Plan guarantee payment of benefits.

After Scott's death, the Hospital billed the Plan for the services rendered and goods furnished to Scott.  In June 1998, the Plan notified Scott's mother and the Hospital that the claim for

2

benefits had been denied, citing a Plan provision excluding benefits for "charges for any treatment or service that was the result of the participant being under the influence of alcohol or drugs." Both Scott's representative and the Hospital appealed the Plan's denial of benefits pursuant to Plan procedure, but their appeal was ultimately rejected by the Wal-Mart Administrative Appeals Committee.

Thereafter, in October 1999, the Hospital sued the Plan in Texas state court. The Plan removed the case to federal court on the ground that ERISA governed the Hospital's claims and moved to dismiss the Hospital's state law causes of action on account of preemption. The district court granted the motion in part, but left the Hospital with its claims for misrepresentation of coverage in violation of the Texas Insurance Code and common law misrepresentation and/or negligent misrepresentation, in addition to its ERISA claim. Thereafter, the Plan named Intracorp as a third-party defendant, claiming a right to indemnity and contribution and asserting breach of contract.

After extensive discovery, the parties filed motions for summary judgment in February 2001. The district court granted summary judgment to the Plan on the Hospital's ERISA claim because it determined that the Hospital lacked standing. Due to its dismissal of the Hospital's sole federal claim, the district court remanded the remaining state law claims to state court, and accordingly, reserved the decision on the Plan's and Intracorp's

3

cross-motions for summary judgment to the state court. The Hospital now appeals the district court's dismissal of its ERISA claim.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). Summary judgment is proper if the record discloses no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

ERISA confers standing to sue to recover benefits due under a plan on "participants" and "beneficiaries." 29 U.S.C. § 1132(a); Vega v. National Life Ins. Servs., Inc., 188 F.3d 287, 291 (5th Cir. 1999). Because a health care provider has no independent right of standing to seek redress under ERISA, such a provider must be capable of classification as a participant or a beneficiary to invoke ERISA. Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir. 1990).

The Hospital does not contend to be, nor is it, a participant in the Plan. Rather, the Hospital maintains that it possesses standing either (1) derivatively, as an assignee of a beneficiary, or (2) independently, as a designated or intended beneficiary.

### A. Derivative Standing as an Assignee

4

The Hospital's claim to derivative ERISA standing is predicated on the "Assignment of Medical Benefits" executed in its favor by Mildred Scott, Scott's mother and sole heir.[1]  It is clear in this Circuit that a health care provider may possess standing under ERISA by virtue of a valid assignment.  In sharp contrast to the express prohibition of the assignment of benefits under an ERISA pension plan, 29 U.S.C. § 1056(d), ERISA contains no provision prohibiting the assignment of benefits under an ERISA welfare plan, nor does it contain language that "even remotely suggests that such assignments are proscribed or ought in any way to be limited."  Hermann Hosp. v. MEBA Med. & Benefits Plan ("Hermann I"), 845 F.2d 1286, 1289 (5th Cir. 1988).  Finding the absence of such proscriptive language in the context of welfare plans to be "significant," this court in Hermann I held that a health care provider with a valid assignment of plan benefits has a derivative right of standing under ERISA.  It reasoned that "[a]n assignment to a health care provider facilitates rather than hampers the employee's receipt of health benefits" and thus would further ERISA's policies.  The court explained:

---

[1]  By agreement dated January 14, 2000, Mrs. Scott transferred and assigned to the Hospital her "right, title, and interest" in "any payment due me, as beneficiary and heir of Leonard P. Scott, as provided for in any . . . employee benefit plan(s) on account of the charges for the hospital goods and services furnished or provided to Leonard P. Scott by the Hospital during the period from and including April 3, 1998 through and including April 21, 1998."  Due to Mr. Scott's condition during his stay at the Hospital, he was unable to execute an assignment of benefits.

> To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front." The providers are better situated and financed to pursue an action for benefits owed for their services. Allowing assignees of beneficiaries to sue under § 1132(a) comports with the principle of subrogation generally applied in the law.

Id. at 1289 & n.13. Having determined that a health care provider with a valid assignment may possess standing, the Hermann I court remanded the case for further proceedings to determine whether the hospital possessed a valid assignment in light of the language in the plan forbidding the assignment of benefits.

On appeal after remand, the court held that, despite the plan's anti-assignment clause, the provider had a valid assignment and thus had standing to sue the plan. Hermann Hosp. v. MEBA Med. & Benefits Plan ("Hermann II"), 959 F.2d 569, 573-75 (5th Cir. 1992). It found that the plan was estopped to assert its anti-assignment clause "because of its protracted failure to assert the clause when Hermann requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits." Id. at 575. Furthermore, the court noted that even if the plan had not been estopped from invoking the anti-assignment clause, the clause

6

would not have invalidated the assignment of benefits received by the hospital because the clause and its "typical 'spendthrift' language" applied "only to unrelated, third-party assignees — other than the health care provider of assigned benefits — such as creditors [of] debts having no nexus with the Plan or its benefits."[2]  Id.  The court continued:

> The anti-assignment clause should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish.  Were we to conclude otherwise, health care providers such as [the hospital], which is entitled to payment for the services it provided as benefits covered under the Plan, would be unable to recover for those services unless [the participant] were to sue [the plan] for recovery of benefits and [the hospital] in turn sue [the participant].  Such a result would be inequitable as [the participant], knowing that any recovery from [the plan] would immediately go to [the hospital], would have no incentive to pursue payment — and might be reluctant to sue the Plan maintained by his own employer or his own union.  Thus, the anti-assignment clause, even if timely asserted, would likely not have prevented [the beneficiary] from assigning to [the hospital] the right to payment for benefits it furnished as the provider of the health care services covered under the Plan.

Id.  Thus, while the Hermann II court expressed serious concerns about the efficacy of anti-assignment provisions, it did not resolve the question whether all such clauses are enforceable.  As

---

[2]  The plan's anti-assignment clause provided:

No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

7

such, the question whether anti-assignment clauses in ERISA-governed welfare plans are enforceable remains unresolved in this Circuit.[3]

In this case, just as in Hermann II, the Plan argues that the assignment received by the Hospital is invalid because the Plan forbids the assignment of benefits.[4] Indeed, the Plan contains several provisions devoted to the topic of assignment, as follows:

**Transferring to Another Party**
Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant. Nothing contained in the written description of Wal-Mart medical coverage shall be construed to make the Plan or Wal-Mart Stores, Inc. liable to any third party to whom a participant may be liable for medical care, treatment, or services.

**Written Assignment to Provider**
If authorized in writing by a participant, the Plan Administrator may pay a benefit directly to a provider of

---

[3] The vast majority of courts (and apparently all the circuit courts) that have considered the issue have concluded that an assignment is ineffectual if the plan contains an anti-assignment provision. See City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 228-29 (1st Cir. 1998); St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield, 49 F.3d 1460, 1464-65 (10th Cir. 1995); Davidowitz v. Delta Dental Plan, 946 F.2d 1476, 1481 (9th Cir. 1991); see also, e.g., Neurological Res. v. Anthem Ins. Cos., 61 F. Supp. 2d 840, 845-46 (S.D. Ind. 1999); Parkside Lutheran Hosp. v. R.J. Zeltner & Assocs., 788 F. Supp. 1002, 1004-05 (N.D. Ill. 1992); Washington Hosp. Ctr. Corp. v. Group Hospitalization & Med. Servs., Inc., 758 F. Supp. 750, 755 (D.D.C. 1991). These courts have reasoned that ERISA leaves "the assignability of benefits to the free negotiations and agreement of the contracting parties." E.g., St. Francis, 49 F.3d at 1464.

[4] The Plan also argued in the district court that the assignment was invalid under state law for lack of consideration. The district court did not reach that question, and therefore it is not properly before us at this time.

8

a medical service instead of the participant as a convenience to the participant. When this is done, all the Company's or Plan's obligations to the eligible participant with respect to such benefit shall be discharged by such payment. The Plan reserves the right to not honor assignment to any provider.

**Medicaid Assignment**
If an associate or dependent is covered by a state plan under Medicaid and if required under applicable law, the Plan will honor an assignment of payment to Medicaid.

**Network Assignment**
Due to our health care network guidelines in several states, assignment may be made directly to the provider in states where a statewide health care network exists.

NOTE: Claim payment for non-network providers or for electronic claims without assignment may be made directly to the participant. The participant will then be responsible for paying the claims.

**Assignment Overview**
Except as permitted by the Plan or as required by a state Medicaid law, no attempted assignments of benefits under the Plan will be valid and will not be recognized by the Plan.

The Plan contends, and the district court agreed, that the anti-assignment language in the Transferring to Another Party and Assignment Overview clauses clearly invalidates the assignment in question here. In response, the Hospital acknowledges the Plan's anti-assignment language, but asserts that the Plan's provisions on assignment, when read together, indicate that the Plan does not completely bar the assignment of benefits. Specifically, it contends that the Plan's Network Assignment clause creates an exception to the general prohibition on assignments in favor of network providers who have received a valid assignment of benefits.

9

As such, the Hospital, which claims to be such a network provider,[5] argues that the assignment it received was not prohibited, but rather was anticipated and approved by the Plan.

The Plan does not dispute that the Hospital qualifies as a network provider. However, it disputes the Hospital's contention that the Network Assignment clause contemplates the *assignment* of medical coverage benefits, submitting instead that it merely authorizes the *direct payment* of benefits to such providers.[6] According to the Plan, that the Network Assignment clause does not contemplate an assignment of benefits is evidenced in the Assignment Overview clause, which provides that "[e]xcept as permitted by the Plan . . . , no attempted assignments of benefits under the Plan will be valid and will not be recognized by the Plan."

In interpreting the Plan document, we read its provisions not in isolation, but as a whole. See McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000). We interpret plan provisions according to their plain meaning, and any ambiguities will be resolved against the Plan. Id.

---

[5]  The Hospital's network provider status is derived from its participation in the Blue Cross Blue Shield of Texas, Inc. ("Blue Cross") Blue Choice Network and, in turn, from Blue Cross's managed care contract with Wal-Mart.

[6]  It distinguishes direct payment from assignment of benefits by explaining that direct payment discharges an obligation owed solely to the participant, whereas an assignment operates to transfer the right to benefits under the Plan.

10

As a starting point, we observe that the Plan contains sweeping language forbidding the assignment of benefits. The plain language of the Transferring to Another Party and Assignment Overview clauses indicates that, as a general rule, the Plan will not honor assignments of benefits. Nevertheless, by equally plain terms, the Plan acknowledges that the prohibition on assignments is not necessarily absolute, as the Assignment Overview clause indicates that there may be exceptions "as permitted by the Plan."

Indeed, a further reading of the Plan document reveals that the Plan has authorized such an exception in the Network Assignment clause. In the clearest of terms, the Plan authorizes assignments to network providers by directing that "assignment may be made directly to the provider." Despite the Plan's assertion that the provision merely authorizes *direct payment* to network provisions, we find that the Plan clearly speaks in terms of assignment and makes no mention of direct payment. We must interpret the provision to mean what it says, and it plainly says that assignment may be made to network providers. To the extent there is an ambiguity, it is construed against the Plan.

Therefore, as the Plan has authorized assignments of benefits to network providers and as it is undisputed that the Hospital is a network provider, we find that the Hospital has made a sufficient showing of standing as an assignee. Accordingly, we reverse that portion of the district court's order finding otherwise and

11

remanding the Hospital's pendent state law claims, and we remand for further proceedings consistent with this opinion.

### B. Independent Standing as a Designated Beneficiary or as an Intended Third-Party Beneficiary

We now turn to the Hospital's alternative argument that, even without a valid assignment, it possesses standing as a designated beneficiary or as an intended third-party beneficiary. For purposes of ERISA, the term "beneficiary" means "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The Hospital attempts to portray itself as a beneficiary by claiming that it is or may become entitled to a Plan benefit pursuant to the managed care contract between Wal-Mart and Blue Cross.

We cannot accept the Hospital's contention that it is a beneficiary for purposes of ERISA. There has been absolutely no showing that the Hospital has been designated as such either by Mr. Scott or in the Plan document. The fact that it may be entitled to a benefit under the Wal-Mart/Blue Cross contract, which is not itself an ERISA plan, is of no relevance in determining whether it is an ERISA beneficiary. Likewise, the Hospital's argument it has standing as a third-party beneficiary fails. This court has previously held that ERISA does not countenance third-party beneficiary claims. See Morales v. Pan Am. Life Ins. Co., 914 F.2d 83, 87 (5th Cir. 1990). Accordingly, we affirm that portion of the

12

district court's order refusing to recognize that the Hospital possess independent standing as a beneficiary.

## IV.   CONCLUSION

Because we agree with the district court that the Hospital lacks independent standing as a beneficiary, we AFFIRM in part. However, because we find that the Hospital has sufficiently shown that it may have standing derivatively as an assignee of a beneficiary, we REVERSE in part and REMAND for further proceedings consistent with this opinion.