United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 4, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 05-20465

))))))))))))))))))))))))))))

MJCM, L.L.C.

Plaintiff-Appellant,

versus

UNITED COMMUNITY BANKS, INC.
successor in interest to First Georgia Bank,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-04-1310

_____

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant MJCM, L.L.C. d/b/a Pinnacle Financial Services ("Pinnacle") appeals the district court's order granting the motion for summary judgment of Defendant-Appellee United Community Banks, Inc., the successor-in-interest to First Georgia Bank ("FGB"). Specifically, Pinnacle contends that the district court erred in (1) finding that FGB experienced a change of control

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

in ownership that would trigger Section 11 of the contract between Pinnacle and FGB; and (2) determining that the contractual phrase "terminated for any reason" was ambiguous and did not apply to terminations caused by a change of control in ownership.

This appeal arises from a dispute regarding a contract for services between Pinnacle and FGB.[1]  On August 27, 2002, FGB and Pinnacle entered into a thirty-month contract that allowed FGB to use Pinnacle's proprietary "Overdraft Privilege Program," which allows banks to permit depositors to overdraft their accounts without having their checks returned in exchange for a fee paid by the depositor.

Both sides performed under the contract until April 2003, when FGB informed Pinnacle that FGB and its parent corporation were undergoing mergers which constituted a "change in control" that triggered termination of the agreement according to Section 11 of the contract.[2]  FGB maintained that, under Section 11, it only owed

---

[1] The parties do not dispute that Texas law governs the contract.

[2] Section 11 states:
11. Assignment.
This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors, legal representatives, and assigns where permitted by this Agreement; *provided*, *however*, that the Client shall not be entitled to assign this Agreement, or allow any person, entity or group, including its affiliates, [sic] use or have the benefit of the Program, the Services or the Software except for the entities disclosed on Exhibit D and **if a change of control in ownership occurs, the Client will pay the fees described**

2

Pinnacle the fees described in Exhibit C of the contract, which amounted to about $40,000. Pinnacle countered that the catch-all language "terminated for any reason" in Section 12 of the contract included terminations due to a change of control and required payment of additional amounts.[3] Accordingly, Pinnacle argued that FGB owed it $898,950, the total for payments due under Section 12.

Pinnacle sued FGB alleging breach of contract and the parties filed cross-motions for summary judgment. Pinnacle appeals the district court's granting of a motion for summary judgment, so the

---

in **Exhibit C** **and this Agreement and all rights of the Client hereunder shall terminate.** (Emphasis added in bold typeface).

[3] Section 12 states:
12. Term; Termination.
The term of this Agreement shall be effective with execution of the Agreement and shall expire on the last day of the 30 month following the first full calendar month of Program implementation. This agreement shall also terminate as provided in Sections 1(a) or 3, upon the termination of either of the Licenses, or if Client breaches this Agreement and fails to cure such breach within thirty (30) days after Pinnacle gives notice of such breach.

**If this Agreement is terminated for any reason**, Pinnacle shall be (a) entitled to retain a ten thousand dollar ($10,000) non-refundable retainer referenced on Exhibit C, (b) reimbursed for any cost or expenses incurred by Pinnacle through the date of termination, (c) if the parties have agreed upon a Baseline prior to termination hereof, paid by Client an amount equal to twenty-five percent (25%) of such baseline for each month remaining under this Agreement. Termination of this Agreement shall not affect Section 12 or Sections 4, 5, 6, 7, 8, 9, 14, 15 and 16. (Emphasis added).

3

familiar standards apply. This court reviews a summary judgment de novo, using the same standards applied by the district court. Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002).

After carefully reviewing all submissions by the parties and the record in this case, we affirm for essentially the same reasons stated by the district court. The mergers between the various banking institutions and holding companies in this case occasioned a "change of control in ownership" that triggered the operation of Section 11. The phrase "terminated for any reason," in the context of Section 12, is ambiguous. "Terminated for any reason" could refer to any reason whatsoever or to the termination events listed in the preceding paragraph. Further, applying Section 12 to Section 11 would render Section 11's reference to Exhibit C superfluous. Reading the contract as a whole, and giving meaning to all of the contract's provisions, we hold that a termination under Section 11 does not bring Section 12 into play. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (holding that contracts should be read as a whole with an effort to give effect to all contractual provisions). In other words, Section 11 contains its own remedy, namely, payment of the fees described in Exhibit C.

For the reasons stated above, we AFFIRM the order of the district court.

AFFIRMED.

4