United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 6, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))))

No. 06-10151

)))))))))))))))))))))))))))))

ABILENE REGIONAL MEDICAL CENTER,

Plaintiff-Appellant,

versus

UNITED INDUSTRIAL WORKERS HEALTH AND BENEFITS PLAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 1:04-CV-232

_____

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant ARMC, L.P., d/b/a Abilene Regional Medical Center ("ARMC") appeals the district court's order granting Defendant-Appellee United Industrial Workers Health and Benefits Plan's ("UIW") motion for summary judgment. Specifically, ARMC contends that the district court erred (1) in finding that the Employee Retirement Income and Security Act of 1974("ERISA"), 29 U.S.C. §§ 1001-1462 (2000), preempted its state law breach of

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

contract claim, and (2) in determining that UIW was entitled to summary judgment on ARMC's negligent misrepresentation claim because ARMC failed to produce evidence of pecuniary loss. Because no genuine issues of material fact exist with respect to either of ARMC's claims, we AFFIRM the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

ARMC, a medical center located in Taylor County, Texas, administered medical care to patient B.L. from September 23, 2003, to October 21, 2003. B.L. stayed in ARMC's acute care section from September 23 through September 30, 2003. On September 30, 2003, B.L. was transferred to ARMC's skilled nursing unit where he remained until October 21, 2003. Upon admission to the acute care section and then again upon transfer to the skilled nursing unit, B.L. signed a "Condition of Admissions Form" in which he agreed to assign any health benefits due to him under his health care plan to ARMC. UIW had an anti-assignment clause at the time of B.L.'s admission to ARMC.

The bill for the acute care portion of the hospitalization was $46,039.84, and the bill for the skilled nursing unit stay was $63,746.71, for a total amount of $109,786.55. In November 2003, ARMC sent its bills to UIW because B.L., as the dependent of a covered employee, was a beneficiary under UIW's benefits plan. UIW then contacted ARMC to negotiate a settlement regarding payment.

2

UIW sent ARMC two proposed settlement agreements, one for each bill. On April 12, 2004, ARMC accepted UIW's settlement terms. ARMC agreed to accept a 15% reduction on the charges for each bill[1] as payment in full and to give up any right to recover the balance from the patient or UIW in exchange for payment by April 29, 2004.

UIW began processing the claim only after ARMC had signed the forms and returned the negotiated settlement forms to UIW. During processing, UIW discovered that B.L. had almost exhausted his lifetime benefits cap of $500,000 and was only eligible for $20,562.25 in benefits. UIW informed ARMC that it would only pay $20,562.25 of the $93,318.58 owed because B.L. had reached his lifetime benefits cap. On April 23, 2005, UIW sent ARMC a check for $20,562.25, which ARMC did not cash.

ARMC appealed to UIW's Board of Trustees requesting additional payment. The Board of Trustees denied the claim, citing the $500,000 lifetime benefits cap.

On September 13, 2004, ARMC filed suit against UIW for breach of contract in the 350th District Court of Taylor County, Texas. UIW removed the case to the Northern District of Texas, Abilene Division. ARMC then amended its complaint to include a negligent misrepresentation claim. The parties filed cross-motions for summary judgment.

---

[1] In other words, ARMC agreed to accept $39,133.87 as payment for the acute care hospitalization and $54,184.71 as payment for the skilled nursing stay. The total for the negotiated bills was $93,318.58.

The district court, on December 23, 2005, granted UIW's motion for summary judgment holding that (1) ERISA preempted ARMC's breach of contract claim, and (2) though ERISA did not preempt ARMC's negligent misrepresentation claim,[2] ARMC could not prove negligent misrepresentation as a matter of law. The district court also denied ARMC's motion for partial summary judgment. ARMC now appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

ARMC appeals a final judgment of the district court, so this court has jurisdiction over the appeal under 28 U.S.C. § 1291.

This court reviews a summary judgment de novo. Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is proper when the pleadings, discovery responses, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

---

[2] UIW does not contest the district court's holding that there is no ERISA preemption for ARMC's negligent misrepresentation claim.

4

## III. DISCUSSION

ARMC appeals the district court's grant of summary judgment because it argues that the district court erred in two respects. First, according to ARMC, the district court erred in holding that ERISA preempted its breach of contract claim. Second, ARMC argues that the district court erred in finding that it failed to produce evidence of pecuniary loss, an element necessary for ARMC to prevail on its negligent misrepresentation claim.

### A. ERISA Preemption of the Breach of Contract Claim

Section 514(a) of ERISA, in pertinent part, provides that ERISA preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted ERISA preemption liberally, stating that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 244 (5th Cir. 1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)). Though the Supreme Court counsels a liberal construction of section 514(a), it has also warned "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Id. We have previously held that state laws subject to ERISA preemption include state law causes of action that relate to an employee benefit plan, even if the claim arises under a general law that has no connection to employee benefit

5

plans. <u>Christopher v. Mobil Oil Corp.</u>, 950 F.2d 1209, 1218-19 (5th Cir. 1992). Therefore, ERISA may preempt a general state law breach of contract claim such as ARMC's.

In <u>Memorial Hospital</u>, this circuit developed a two-pronged test to determine when a state law "relates to" an ERISA plan. ERISA preempts a state law when: "(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities--the employer, the plan and its fiduciaries, and the participants and beneficiaries." <u>Mem'l Hosp.</u>, 904 F.2d at 245.

Subsequent cases have elaborated on the <u>Memorial Hospital</u> test. In <u>Transitional Hospitals Corp. v. Blue Cross & Blue Shield of Texas, Inc.</u>, 164 F.3d 952, 955 (5th Cir. 1999), we determined that a threshold question before applying <u>Memorial Hospital</u> was whether there was coverage under the plan. If there was no coverage, then, clearly, the health care provider acts as an independent third-party not subject to ERISA preemption. <u>Id.</u> If there was coverage, then the court must apply <u>Memorial Hospital</u>. In this case, neither party disputes that B.L. was covered under UIW's benefits plan; therefore, we must apply the <u>Memorial Hospital</u> framework.

The <u>Memorial Hospital</u> framework requires the court to "determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." <u>Id.</u> In other words,

6

Memorial Hospital demands a fact-sensitive inquiry into whether a medical services provider is properly characterized as an independent third-party provider or as an assignee asserting a derivative claim for ERISA benefits. See Cypress Fairbanks Med. Ctr., Inc. v. Pan-Am. Life Ins. Co., 110 F.3d 280, 284 (5th Cir. 1997).

ARMC argues that ERISA does not preempt its breach of contract claim because it is suing as an independent third-party provider, and not as an assignee asserting a derivative claim for benefits. ARMC points to cases such as Pasack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), and Rogers v. CIGNA Healthcare of Texas, 227 F. Supp. 2d 652 (W.D. Tex. 2001), to support the proposition that ERISA does not preempt breach of contract claims by third-party health care providers. The present case is distinguishable from those cited by ARMC. In essence, all of the cases cited by ARMC involved health care providers suing ERISA plans for breaching pre-existing fee-for-service contracts. Unlike ARMC's contracts with UIW, those cases did not address contracts that arose from settlements after a specific claim for benefits had been made. ARMC also points to the facts that the settlement contracts are outside of the scope of UIW's benefits plan and that ARMC's rights and obligations under the contracts differ from the rights it could have as an assignee. These arguments are unavailing.

We agree with the district court that "[w]hen an ERISA plan

7

[such as UIW] contracts with a third-party health care provider [such as ARMC] to settle a payment of services already rendered to a patient, a claim for breach of that settlement is invariably dependent upon and derived from the patient's original assignment of benefits to the hospital." <u>ARMC, L.P. v. United Indus. Workers and Health Benefits Plan</u>, No. 1:04-CV-232-C, slip op. at 11 (N.D. Tex. Dec. 23, 2005). ARMC has attempted to avoid ERISA preemption by suing on the basis of "independent" contracts and not suing as an assignee, but it cannot escape the fact that those contracts arose from settlement negotiations about B.L.'s claim for benefits. These contracts are not truly independent from ARMC's status as an assignee. The contracts have a significant "nexus" with the ERISA plan and its benefit system. <u>See</u> <u>Hermann Hosp. v. MEBA Med. & Benefits Plan</u>, 959 F.2d 569, 578 (5th Cir. 1992) (finding ERISA preemption where state law claims of fraud and negligent misrepresentation had a nexus with an ERISA plan and its benefit system) (<u>Hermann II</u>). Given this "nexus," ARMC is properly characterized as an assignee asserting a derivative claim for benefits, and not as an independent third-party provider. <u>Cf.</u> <u>Cypress Fairbanks</u>, 110 F.3d at 284.

However, ARMC contends that it cannot act as an assignee due to an anti-assignment provision in UIW's benefits plan. Unlike with ERISA pension benefits, ERISA allows for the assignment of health care benefits because they facilitate the beneficiary receiving health care services. <u>Hermann Hosp. v. MEBA Med. & Benefits Plan</u>,

8

845 F.2d 1286, 1289 (5th Cir. 1988) (Hermann I).  In Hermann II, we held that an anti-assignment clause was unenforceable against a hospital because the clause applied "only to unrelated, third-party assignees--other than the health care provider of assigned benefits--such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits, or even involuntary alienations such as attempting to garnish payments for plan benefits."  959 F.2d at 575.  The Hermann II court found that the language in the clause was similar to spendthrift provisions in trusts.  We have, however, enforced an anti-assignment clause in which the clause did not resemble a spendthrift provision and unambiguously stated that the plan would not be "liable to any third-party to whom a participant may be liable for medical care, treatment, or services."  LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 351 (5th Cir. 2002).

In this case, the anti-assignment provision is unenforceable against health care providers because it contains spendthrift language similar to the anti-assignment clause in Hermann II.  The Herman II clause stated:

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and <u>any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims</u>.

Herman II, 959 F.2d at 574 (emphasis added).  UIW's anti-assignment provision reads:

> No employee, or designated beneficiary, or estate of an Employee shall have the right to assign any benefits to which he, she or it may be entitled hereunder and any such assignment shall be void as to the Plan; <u>no benefit shall be subject to attachment or other legal process for or against an employee, designated beneficiary or estate.</u>

R. at 598 (emphasis added).  The UIW anti-assignment clause does not specifically mention health care providers and demonstrates a similar concern with preventing assignment for legal process and attachment.  Given its similarity to the clause in <u>Hermannn II</u>, UIW's anti-assignment provision is unenforceable against health care providers.  Therefore, UIW's anti-assignment provision does not prevent ARMC from acting as an assignee of B.L.

Having determined that ARMC is acting as an assignee of B.L., we must also address <u>Memorial Hospital</u>'s second prong, namely, whether ARMC's claims directly affect the relationship among traditional ERISA entities--the employer, the plan and its fiduciaries, and the participants and beneficiaries.[3]  ARMC's breach of contract claim satisfies the second prong because (1) ARMC was a traditional ERISA entity by being an assignee of beneficiary B.L.,[4]

---

[3] ARMC's sole argument for why its breach of contract claim would not affect the relationship among traditional ERISA entities is that it is suing on an independent contract claim, and not as an assignee.  It is true that ERISA does not preempt a state law claim simply because a hospital <u>could</u> sue as an assignee.  <u>See</u> <u>Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.</u>, 187 F.3d 1045, 1050 (9th Cir. 1999).  However, we have already determined that ARMC is, in fact, suing as an assignee, and not on the basis of an independent contract.

[4] Under <u>Memorial Hospial</u>, an assignee is considered as an ERISA entity because the assignee stands in the same shoes as an ERISA beneficiary.  <u>See</u> <u>Mem'l Hosp.</u>, 904 F.2d at 250.

10

and (2) the contract would affect the relationship among UIW and its beneficiaries because ARMC is seeking a benefit that UIW does not provide to its participants. In other words, ARMC is acting as an assignee that is seeking to recover amounts in excess of the $500,000 lifetime benefits cap, a benefit that UIW does not afford other beneficiaries.

Though ARMC asserts that it is acting as an independent third-party provider, after engaging in a fact-sensitive inquiry, we conclude that a significant nexus exists between ARMC's breach of contract claim and UIW's benefits plan. Rather than bringing a truly independent contract claim, ARMC is actually suing as an assignee of B.L. Furthermore, ARMC's breach of contract claim would directly affect the relationship among traditional ERISA entities. Accordingly, we hold that ERISA preempts ARMC's breach of contract claim. We must next address whether ARMC has presented sufficient evidence to survive summary judgment on its negligent misrepresentation claim.

B. Negligent Misrepresentation

In Texas, the elements for a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

11

Fed. Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442-43 (Tex. 1991). We affirm the district court's grant of summary judgment on ARMC's negligent misrepresentation claim because we agree with the district court that ARMC has failed to provide any evidence of pecuniary loss.[5] The district court found that ARMC "failed to provide this Court with competent summary judgment evidence that ARMC has in fact lost its right to recover unpaid amounts from patient B.L." ARMC, L.P., No. 1:04-CV-232-C at 14. The court cited to the "Condition of Admission Form" signed by B.L. in which he declared that he was "personally responsible to this hospital and/or physician for charges not covered by this assignment." Id. The district court concluded that "[s]ince only $20,562.25 of the $109,786.55 in hospital charges is covered by ARMC's assignment of benefits, B.L. still remains liable for the unpaid balance of hospital expenses." Id.

ARMC counters that it gave up the right to recover unpaid amounts from B.L. in both of its settlement agreements with UIW. The settlement agreements state, "Provider [ARMC] accepts this adjusted billing amount as full payment without further recourse to either the member/patient or Plan." Admittedly, this provision could mean that ARMC gave up its right to sue B.L., the patient, for

_____

[5] Because ARMC has provided no evidence of pecuniary loss, an element necessary to prevail on a negligent misrepresentation claim, we express no opinion regarding whether ARMC has provided evidence for any of the other negligent misrepresentation elements.

12

any unpaid amounts from UIW. However, the Texas Supreme Court has made clear that "[a] fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994); see also Mead v. Johnson Group, Inc., 615 S.W.2d 685, 689 (Tex. 1981) (stating "[d]efault by one party excuses performance by the other party"). Once UIW refused to comply with the settlement agreements by not paying the full amounts, ARMC was no longer bound by those agreements and was free to seek recovery from B.L. Because ARMC may still seek recovery from B.L. for any unpaid amounts, we hold that ARMC cannot, as a matter of law, prove that it has suffered a pecuniary loss. We therefore conclude that ARMC has failed to create a genuine issue of material fact with respect to its negligent misrepresentation claim.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

AFFIRMED.

13